## JOHNSON *v.* GERASIMOS.

1. LIBEL AND SLANDER—PRIVILEGED COMMUNICATIONS.

In action for libel and slander, statements made by defendant to auditor employed to audit company books and discover, if possible, amount and cause of shortage, indicating his suspicion that plaintiff was taking company money, were privileged; but such statements to other employees were not privileged.

2. MALICIOUS PROSECUTION—PROBABLE CAUSE.

In action for malicious prosecution, evidence as to probable cause, *held,* to present question for jury.

3. LIBEL AND SLANDER—DEFENDANT NOT LIABLE FOR LIBEL WHERE HE DID NOT PUBLISH OR CAUSE TO BE PUBLISHED SLANDEROUS ARTICLE.

Defendant who furnished information to reporters in reference to a shortage of money belonging to a company in which he was interested may not be called on to respond in damages for libel, although he might for slander, where he did not publish the article or cause it to be published.

4. NEW TRIAL—NEWLY-DISCOVERED EVIDENCE—ABUSE OF DISCRE-
TION.

There was no abuse of discretion in overruling motion for new
trial on ground of newly-discovered evidence consisting of
transcript of what took place in prosecutor's office, where
defendant was present when statement was taken and had
plenty of time to get transcript before trial.

Error to Wayne; Root (Jesse), J., presiding.
Submitted April 9, 1929. (Docket No. 111, Calendar
No. 34,072.) Decided June 3, 1929.

Case by Anna Johnson against Theodore Gera-
simos for malicious prosecution, slander and libel.
From judgment for plaintiff, defendant brings error.
Affirmed conditionally.

*William Henry Gallagher* (*Edward J. Fallon,* of
counsel), for plaintiff.

*James R. Neill* (*Charles C. Stewart,* of counsel),
for defendant.

FELLOWS, J.  Plaintiff was office girl and book-
keeper of the Greek-American Cigar Company, in
which defendant was heavily interested.  Upon his
complaint she was arrested, charged with embezzle-
ment, but was discharged.  In this action she counts
on malicious prosecution, slander and libel, and the
jury separated its verdict and awarded $2,000 for
malicious prosecution, $1,000 for damage to feelings,
$1,000 for loss of occupation, $1,000 for damage to
character.  On motion for new trial, plaintiff was
required to remit $1,000, which was done; this was
required on the holding of the court that the amount
allowed plaintiff for damage to reputation and loss
of employment was excessive.

1.  Upon the count for slander, plaintiff was permitted to show and to recover for statements alleged to have been untrue, made to the auditor employed to audit the books of the company. These statements indicated defendant's suspicion that plaintiff was taking money of the company. We think these statements were privileged. The auditor was called to discover, if possible, the amount and cause of the shortage which all the testimony shows was from $25,000 to $30,000. Manifestly, defendant had a right and it was his duty to inform the auditor of any fact or any conclusion he had reached which would aid in the unraveling of the mixed condition existing in the office of the company. His statements to other employees, however, were not privileged.

2.  We are not persuaded that there is any error upon this record in so far as it relates to the count for malicious prosecution. If defendant's testimony was undisputed, he would have established a complete defense as matter of law. His testimony was in effect that he discovered this large shortage; he had two audits made, the latter one clearly establishing a shortage of $25,000. He consulted with his attorney, the late Percy W. Grose, who advised him to consult the prosecuting attorney's office, where he met Mr. Lewandowski, an assistant with whom Mr. Grose had talked, and who at the time of the trial was confined in an insane asylum, so that his testimony was unavailable; that Mr. Lewandowski called in a stenographer and fully examined plaintiff, who with another employee had been taken to the prosecutor's office; that after the examination was completed, Mr. Lewandowski said: "Mr. Gerasimos, we will investigate this and let you know," and that within a few days Mr. Grose called him up and in-

structed him to go down to the county building and
sign the complaint, which he did. Now, if this was
undisputed, he would have established probable
cause. *Weiden* v. *Weiden,* 246 Mich. 347. But the
plaintiff's version was entirely different. She testi-
fies that after Mr. Lewandowski had fully examined
her, he turned to defendant and dismissed him with
the statement: "You have nothing on these peo-
ple." It is also somewhat significant that the war-
rant was not authorized by Mr. Lewandowski, who
conducted the examination, but another assistant,
who, so far as the record discloses, made no investi-
gation into the matter. The question of probable
cause was for the jury, and it was properly submit-
ted to them.

3. There was an article in the News and one in
the Free Press at the time of the arrest, and in sepa-
rate counts defendant was charged with libel for the
publication of these items. The reporter of the
News testified that she obtained her interview at
defendant's place of business, and that she intro-
duced herself and told where she was from. The
Free Press reporter, so far as his testimony ap-
pears, did not disclose to the defendant that he was
a reporter or what purpose he had in interrogating
him. Some time had elapsed before they gave their
testimony, and their recollection is somewhat hazy.
Error is assigned on the following charge of the
court:

"Let me say to you that the defendant would be
responsible for that which appeared in the news-
papers, both newspapers, of the city of Detroit—I
do not mean for everything that was said in the
article, but for those things which were testified to
that he gave to the newspaper reporters, if you find
that he did so state to them, because he having given

the substance of that interview to the newspapers—
if you find he did do it—he would be just as much
responsible legally as the newspapers would be for
publishing it.''

This court has held that all actively connected
with and engaged in the publication of a libel are
responsible for the results: *Grinnell* v. *Cable-Nel-
son Piano Co.,* 169 Mich. 183; *Haney Manfg. Co.* v.
*Perkins,* 78 Mich. 1; *Pollasky* v. *Minchener,* 81 Mich.
280 (9 L. R. A. 102, 21 Am. St. Rep. 516); *Cyrowski*
v. *Publishing Co.,* 196 Mich. 648. But the question
here is considerably narrowed; as to the count on
the Free Press item, it is: May one be held for libel
upon a newspaper article printed without either his
express or implied consent or authority, and which
results from questions asked by one whom he does
not know is a reporter? As to the News article the
same question, except he had knowledge that he was
being questioned by a reporter. Counsel have not
called our attention to any cases from this or any
other court passing on the specific question, and in
the limit of time at our disposal we have found but
four cases. In *Valentine* v. *Gonzalez,* 190 App. Div.
(N. Y.) 490, as reported in 179 N. Y. Supp. 711, it
was held (quoting from the syllabus):

"Where defendant furnished the information
upon which a libel was based, and documents in sup-
port thereof, to a newspaper reporter, knowing that
the latter intended to publish the story, he caused
the defamatory matter to be published, though the
reporter solicited the information, and defendant
did not request that it be published."

The court of last resort of New York, however,
held in *Schoepflin* v. *Coffey,* 162 N. Y. 12 (56 N. E.
502):

"The record in this case seems to be entirely barren of proof that the defendant in any way procured, requested, commanded or induced the printing of the matters set forth in the complaint. The most that was established was that a person whom the defendant knew to be a reporter asked him as to a report which was in circulation concerning the matters alleged in the complaint, stating that he understood the defendant had asserted the facts, which were subsequently published, and the latter admitted having done so. There is, however, no proof that his statement was made for publication, but, on the contrary, the proof was that nothing was said upon the subject. There is also other evidence of the defendant which tends to show that he did not intend that it should be published and had no design to procure its publication. We are of the opinion that the court erred in denying the defendant's motion for a nonsuit, and in not directing a verdict for him upon the ground that the proof was insufficient to constitute a cause of action against him for libel."

In *Cochran* v. *Butterfield,* 18 N. H. 115 (45 Am. Dec. 363), it was said:

"This action is against the defendant for publishing a libel in the 'Gleaner.' The evidence is, that he communicated orally some of the materials that were woven into the production by the witness, and that a letter supposed, upon evidence presently to be considered, to have been written by the defendant, furnished other materials. The letter might itself have been a libel, but a different one, no doubt, from that complained of in the action. Besides, if it were the same it is not proved.

"Now this evidence comes entirely short of proving that the defendant published, or procured another to publish, any libel whatever in the Gleaner. It does not appear that he ever requested a libel to be composed out of the materials that he supplied, or

that he expected, or had any cause of suspecting, that his communications would have been used for such a purpose."

And in *Henry* v. *Railroad Co.*, 139 Pa. 289 (21 Atl. 157), Chief Justice Paxson, speaking for the court, said:

"There was not a scintilla of testimony to show that the company published a libel, authorized any one else to do so, or knew that it had been done. It appears that when it became known that irregularities were supposed to exist in the ticket department of the company, a number of reporters, with the irrepressible enterprise for which they are somewhat celebrated, proceeded in their own way to investigate the matter and lay the fruits thereof before the public through the Pittsburgh newspapers. But there was no evidence that these articles were dictated or even inspired by the company, or by Mr. Holbrook. That he was beset by the reporters for information is certain; that he gave very little, and that very reluctantly, is equally certain. And even if he furnished all the information which the plaintiff imputes to him, it would not make him responsible for a libel, unless he went one step further, and procured its publication. Of this there was no evidence."

Clearly, defendant could not be called to respond for the Free Press article in a court for libel, nor do we think he could upon this record for the News article. In neither case did he publish or cause to be published the libelous article, and if he did not he could not be called upon to respond for libel even though he might be for slander.

4. Defendant moved for a new trial on the grounds of newly-discovered evidence; the newly-discovered evidence being a transcript of what took place in the prosecutor's office. There was no abuse

of discretion in overruling the motion. Defendant was present when the stenographer took this statement and had plenty of time to get the transcript before the trial. See *Webert* v. *Maser, ante,* 245.

There was no error so far as the malicious prosecution feature of the case was concerned; there was error on the question of libel and slander. We are inclined to give the plaintiff the election to discontinue as to the counts other than the one for malicious prosecution, and if she does so within ten days, the judgment will be affirmed in the sum of $2,000; if she does not, the case will be reversed, with a new trial. In either event defendant will have costs of this court.

North, C. J., and Fead, Wiest, Clark, McDonald, Potter, and Sharpe, JJ., concurred.