BOWERMAN v. DETROIT FREE PRESS.

1. LIBEL AND SLANDER—ADULTERY—LIBEL PER SE.
   If to ordinary minds an article falsely charges a married woman with adultery, its publication is libelous *per se* and furnishes ground for recovery without the allegation of special damages (3 Comp. Laws 1929, § 14470).

2. SAME—ACCUSATION OF ADULTERY—QUESTION FOR JURY.
   Submission to jury of question of whether or not article in newspaper, relative to criminal proceeding against a doctor for performance of an illegal operation upon plaintiff, charged plaintiff with adulterous conduct by falsely reporting she testified that her husband was jealous of an imagined affair with another man *held*, not error.

3. SAME—AMBIGUITY—QUESTION FOR JURY.
   In action for libel where trial court is of opinion words published by defendant, claimed to have been libelous *per se*, were ambiguous, question as to libelous character is properly submitted to jury.

4. SAME—DECLARATION—LIBEL PER SE—SPECIAL DAMAGES.
   Declaration alleging publication by defendant falsely imputing unchastity to plaintiff, a married woman, *held*, not fatally defective for failure to plead special damages where judge permitted jury to determine whether or not words were libelous *per se* and finding was made publication was libelous *per se*.

5. SAME—LIBEL PER SE—SPECIAL DAMAGES.
   Plaintiff is not required to allege or prove special damages in order to maintain action for libel, where publication is found to be libelous *per se*.

6. SAME—IMPUTATION OF UNCHASTITY—LIBEL PER SE—SPECIAL DAMAGES NEED NOT BE PLEADED.
   Recovery by plaintiff, a married woman, without having alleged special damages, on theory that published article was libelous *per se* in that it imputed to her a want of chastity *held*, sustainable under statute authorizing action for imputation of unchastity (3 Comp. Laws 1929, § 14470).

7. Appeal and Error—Libel—Evidence—Hearsay—Expert Testimony.

In libel action against newspaper for false report of plaintiff's testimony in criminal proceeding against doctor for performing an illegal operation upon her, admission of testimony of another doctor who had examined plaintiff days before and after she read publication falsely imputing unchastity, based upon hearsay, *held*, reversible error, where his statement that her subsequent agitated condition was because she felt the article unfair to her, was positive and not a matter of expert opinion, defendant's objection being to conclusions drawn by the witness; there being a fair inference that the witness' testimony carried considerable weight with the jury.

8. Libel and Slander—Joint Defendants—Damages—Trial.

Fair and impartial trial *held*, denied to defendant publisher in libel action where recovery for only nominal damages was sought against joint co-defendant, a local distributor of newspapers, and argument and instructions to jury permitted recovery of nominal damages from local defendant and substantial damages from nonresident defendant publisher.

9. Damages—No Apportionment Between Joint Tortfeasors.

Plaintiff who elected to proceed against two defendants as joint tortfeasors is bound by her election so to proceed and may not have recovery of nominal damages from one defendant and substantial damages from other notwithstanding one may have been more actively at fault than other as each is liable for all damages adjudged.

10. Libel and Slander—Persons Responsible.

All persons who have been engaged in, or have been in any way connected with, the publication of a libel are responsible therefor.

Appeal from Lapeer; Cramton (Louis C.), J. Submitted October 20, 1936. (Docket No. 31, Calendar No. 39,109.) Decided April 29, 1937.

Case by Onalee Bowerman against Detroit Free Press, a Michigan corporation, and Roy Stiles for libel. Verdict and judgment for plaintiff. Defendants appeal. Reversed and new trial granted.

*George W. DesJardins* and *John G. Libbers*, for plaintiff.

*Robert M. Brownson, Kenneth Murray* and *Paul Marco*, for defendants.

North, J.   Plaintiff herein was a witness for the prosecution in a criminal proceeding against Dr. James Edward Roy Smith wherein he was charged with having performed an illegal operation on plaintiff.   In publishing a news report of the trial the defendant Detroit Free Press printed in its paper and caused to be circulated an article which in part read as follows:

"Lapeer, Mich., June 8—Charges by Mrs. Fred Bowerman that she was the unwilling subject of an illegal operation brought Dr. James Edward Roy Smith, prominent Imlay City surgeon, into circuit court here Monday.

"Taking the witness stand, Mrs. Bowerman, 34 years old, *testified that her husband, jealous of an imagined affair with another man,* forced her to go with him to the Imlay City Hospital where she was placed under ether."

In this libel suit Mrs. Bowerman charges that the italicized portion of the above quoted news item was falsely and maliciously published of and concerning her by the Detroit Free Press; contending, as the record conclusively shows, that she did not so testify, and that such portion of the publication is wholly untrue.   Instead, the record shows that whatever compulsion there was on the part of plaintiff's husband arose from his opposition to having a child born to himself and plaintiff.   On trial by jury plaintiff had verdict and judgment for a substantial amount against the Detroit Free Press and

for six cents damages against defendant Roy Stiles, who was joined as defendant on the ground that he had charge of the circulation of the Free Press in Lapeer. The defendants have appealed. Unless otherwise indicated, the Detroit Free Press, a Michigan corporation, will hereinafter be referred to as the defendant and appellant.

Appellant's first contention is that the words concerning which plaintiff complains are not libelous at all, or at least they are not libelous *per se.* Notwithstanding appellee claims that the words used were libelous *per se,* there is included in her declaration an allegation of innuendo referring to the italicized words published, which allegation we quote:

"That by the said words used in said article, the said defendants were meant and understood to mean:

"(a) That said plaintiff had been unfaithful to her marital obligations.

"(b) That plaintiff's husband had reason to believe that plaintiff had been unduly intimate with other men.

"(c) That plaintiff's husband had reason to believe that plaintiff had committed the crime of adultery."

Appellant contends that the published words are not libelous at all because appellee was accused only of an imaginary affair, and that the use of the word "imagine" effectively renders the existence of an actual affair impossible. However, we cannot say, as a matter of law, that the claim of appellee is wholly untenable, when it is contended in her behalf that a fair reading of the article published might convey to the ordinary mind that she was guilty of

adulterous relations with some man under such conditions as caused her husband to "imagine," think or believe that she was unfaithful to her marital obligations. Testimony of witnesses was taken who ascribed such a meaning to the article.

Witness Elva Stewart testified:

"Q. What was the effect upon you of Exhibit A (the published article)?

"A. Why, didn't have any effect, only just believed it and took it for a fact."

William Thompson testified:

"Q. What effect did the reading of that article have upon you?

"A. Well, I believed it. * * *

"Q. You were satisfied to let your mind be made up that Mrs. Bowerman was guilty of an imagined affair with another man?

"A. Certainly."

If to ordinary minds the article charged plaintiff with adultery, its publication was libelous *per se,* and furnishes ground for recovery without the allegation of special damages. It is so provided by statute:

"Words imputing to any female a want of chastity shall be deemed to be actionable in themselves, and shall subject the person who shall utter and publish such words, to an action on the case for slander, in the same manner as the uttering and publishing of words imputing the commission of a criminal offense." 3 Comp. Laws 1929, § 14470.

Under the circumstances presented by this record it was not error to submit the issue to the jury as to whether the published article falsely charged plaintiff with adulterous misconduct.

"The chief contention is whether these words so uttered by defendant are actionable *per se.* The trial court was of the opinion that they were ambiguous, and under the rule left the question to the jury. * * * Ordinarily this question is for the court to determine. *Hay* v. *Reid,* 85 Mich. 296; *Brewer* v. *Chase,* 121 Mich. 526 (46 L. R. A. 397, 80 Am. St. Rep. 527). But where the language complained of is ambiguous or is open to a double construction, the question may be submitted to a jury. 25 Cyc. p. 543; *Loranger* v. *Loranger,* 115 Mich. 681." *Maciejewski* v. *Rychart,* 192 Mich. 530.

Another ground of appeal is stated as follows:

"No special damages have been pleaded or proved by plaintiff and the words sued upon being merely actionable *per quod* (if at all), her declaration is, under the authorities, fatally defective and does not plead a cause of action."

This contention cannot be sustained because the jury found the publication libelous *per se.* The publication being so found to be libelous *per se* plaintiff was not required to allege or prove special damages.

"In actions for slander, where the words are not actionable *per se,* the plaintiff must both allege and prove that by reason of the words he has sustained some damages of a pecuniary nature. In such actions, where the words are actionable in themselves, no special damages need be alleged or proved, and the jury are warranted in giving such damages as shall compensate the plaintiff for the wrong and injury done." *Newman* v. *Stein,* 75 Mich. 402, 406 (13 Am. St. Rep. 447).

See, also, *Burt* v. *McBain,* 29 Mich. 260; *Burr's Damascus Tool Works* v. *Peninsular Tool Manfg. Co.,* 142 Mich. 417. In the instant case plaintiff,

without having alleged special damages, recovered on the theory that the published article was libelous *per se* in that it imputed to her a want of chastity. Such a recovery is sustainable under the above quoted statute.

Dr. Gilbert C. Bishop testified as a witness for plaintiff. Appellant contends that testimony given by the doctor on direct examination to which we call attention below was prejudicial to defendant and denial of defendant's motion to strike the testimony was reversible error. While the criminal case against Dr. Smith in which plaintiff herein was an important witness was being tried, Dr. Bishop was called to attend plaintiff. As to her condition Dr. Bishop testified:

"I found her greatly agitated and crying and very nervous.

"*Q.* Did you take a history to determine the cause?

"*A.* She had read the article which appeared in the morning Free Press that morning and (it) seemed to have a bad effect on her. * * *

"*Q.* Had you seen her the previous day?

"*A.* Yes, I had.

"*Q.* You may compare her condition after reading that article with her condition before she had read it, as to what effect it had upon her.

"*A.* She was considerably more agitated the next day after reading this article; felt it was unfair to her."

Thereupon defendant's counsel interposed the following:

"I object to this and move to strike it out. * * * We have no objections to facts going in, but the conclusions of the witness."

Considerable colloquy ensued between court and counsel, following which defendant's counsel, in response to an inquiry by the court said:

"Yes, the defendant moves the court at this time to instruct the jury that any answers which Dr. Bishop made to questions concerning the way Mrs. Bowerman felt upon reading the article of July 9, 1935, must be stricken and that the jury must pay no attention to such answers."

This motion was denied. In so ruling we think the court committed error. We do not overlook the fact pointed out by appellee that the doctor was an expert rather than a lay witness. Nonetheless there are limitations to the scope of the testimony of such a witness. Even if it be assumed that the doctor was entitled to consider and state to the jury something of the "history" of Mrs. Bowerman's case, still we think it was going too far for him to say that Mrs. Bowerman, plaintiff in the case, "felt it (the published article) was unfair to her." Her statement in that regard as testified to by the doctor was hearsay; and it related very directly to the question of injury to plaintiff's feelings for which the jury awarded her $5,000 damages. There was further error in taking the quoted testimony of Dr. Bishop in that instead of testifying what *in his opinion* was or might have been the effect of the article upon her, he testified positively (not in the terms of expert testimony) that "the effect it had upon her" was that "she was considerably more agitated the next day after reading this article; felt it was unfair to her." While the motion to strike was under consideration by the court, defendant's counsel said:

"We are basing the objection on the conclusions of the doctor. We want the facts and let the jury draw the conclusions."

Conceding that in his professional capacity the doctor might have testified that he was of the opinion that plaintiff's condition was caused or might have been caused by reading the article, still it was clearly a violation of the rules of evidence and prejudicial for him to testify that as the effect of having read the article plaintiff *was* more agitated, etc. It is a fair inference that the doctor's testimony in behalf of plaintiff carried substantial weight with the jury. She was awarded a very substantial amount of damages for injury to her feelings. We think it must be held that the doctor's testimony above noted constituted reversible error in this case.

Appellant also asserts there was error in permitting the jury to find a different amount of damages against the respective joint tortfeasors, six cents against the defendant Stiles and $12,500 against the Detroit Free Press. On cross-examination plaintiff was asked:

"Mrs. Bowerman, Mr. Roy Stiles is also made a defendant in this case, together with the Detroit Free Press. What do you claim his relationship in the case is?"

Her counsel thereupon stated:

"I say that is a legal question, your Honor, and I can answer it for the witness. * * * I say for the record Mr. Stiles was included simply because he was the local distributor of the paper and delivered the Free Press in this town. So far as Mr. Stiles is concerned, we propose only to ask the jury for six cents damages."

In his argument to the jury, plaintiff's attorney said:

"Gentlemen, your verdict, the verdict we are asking at your hands is this, so far as Roy Stiles is concerned, he delivered these papers up and down the street as he has always done for 20 years; he brought my paper to the office. He is only a nominal defendant for our own local purpose, that the forum of this case may be placed in this court, and we are asking six cents as to Roy Stiles.''

In the charge to the jury the court said:

"If your verdict in this case is for the plaintiff then you will find a verdict of six cents damages against defendant Roy Stiles, and as against the defendant the Detroit Free Press you shall find separately for damages as to feelings and reputation within the instructions the court has given you, but if you find for the defendant you will simply bring in a verdict of no cause for action.''

It is the contention of the Detroit Free Press that its right to a fair and impartial trial was violated by plaintiff's conduct in making Stiles a joint defendant for the express purpose of obtaining jurisdiction in Lapeer county of a corporate defendant not residing in that county; and then going to the jury on a claim that only nominal damages should be found against the local defendant but substantial damages against the nonresident defendant, in this suit for damages which arose out of a single tortious act. We think this contention is sound. That such conduct of the suit would adversely affect the nonresident defendant as to the amount of damages seems almost a certainty. Further, plaintiff elected to proceed against these two defendants as joint tortfeasors. She was not compelled to do so. She is bound by her election. One of several joint tortfeasors may have been more actively at fault than others, but the general rule is

that when they are joined as defendants each is liable for all the damages adjudged.

"As a general rule, all persons who cause or participate in the publication of libelous or slanderous matter are responsible for such publication, each being liable in full without apportionment as to his particular share." 37 C. J. p. 12.

See, also, 17 R. C. L. p. 429.

"In a joint action against several for trespass or other tort, if all are found guilty entire or joint damages must be assessed against them." 2 Sutherland on Damages (4th Ed.), p. 1531.

"Every wrongdoer is liable for the whole damage, and it does not matter * * * whether they acted, as between themselves, as equals, or one of them as agent or servant of another." Webb's Pollock on Torts, p. 231.

In a very similar case which questions the propriety of taking a verdict and judgment for varying amounts for compensatory damages against different defendants in a libel suit, the supreme court of the United States said:

"All the defendants joined in a plea of not guilty, and the jury could not find a verdict of guilty against all, and apportion the damages among the several defendants by giving a certain amount as against the company and a certain other amount as against the individual defendants. Those of the wrongdoers who are sued together and found guilty in an action of tort are liable for the whole injury to plaintiff, without examining the question of the different degrees of culpability. And if but one is sued, he is liable for all the damages inflicted by the most culpable. Cooley on Torts, 133, 135, 136; *Currier* v. *Swan,* 63 Maine, 323; *Berry* v. *Fletcher,* 1 Dill. (U. S. C. C.) 67; *Pardridge* v. *Brady,* 7 Ill. App. 639; *McCarthy* v. *DeArmit,* 99 Pa. 63, 72." *Washington Gas*

*Light Co.* v. *Lansden,* 172 U. S. 534, 552 (19 Sup. Ct. 296).

In another libel case the following is stated by the circuit court of appeals of the sixth district:

"That the court erred in permitting such an apportionment of damages when the plaintiff had elected to sue both defendants in one action is very obvious. Wrongdoers sued together and found guilty in an action for slander or libel, or any other form of tort, are liable for the whole injury to the plaintiff; and the question as to whether one is more culpable than another is of no importance, for each is liable for all the damages, without regard to degrees of guilt." *Cunningham* v. *Underwood,* 53 C. C. A. 99 (116 Fed. 803).

The foregoing authorities are in accord with our own decisions:

"The rule is well settled that all persons who have been engaged in, or have been in any way connected with, the publication of a libel are responsible therefor." *Grinnell* v. *Cable-Nelson Piano Co.,* 169 Mich. 183, 191.

"This court has held that all actively connected with and engaged in the publication of a libel are responsible for the results." (Citing earlier Michigan decisions.) *Johnson* v. *Gerasimos,* 247 Mich. 248, 252.

There was a departure from the established practice in libel cases and prejudicial error in permitting the jury to assess damages for this single tort in varying amounts against the different defendants.

Other questions are presented on this appeal, but because they are either lacking in merit or because they are of such character that they are not likely to

recur in the event of a new trial, it is not necessary to embody determination thereof in this decision.

The judgment entered in the circuit court is reversed and the case remanded for new trial. Appellant will have costs on this appeal.

Fead, C. J., and Wiest, Bushnell, and Sharpe, JJ., concurred with North, J.

Butzel, J. (*concurring*). There is considerable question whether to the ordinary reasonable mind the article would have the effect contended for by plaintiff. An imagined affair as a rule denotes that it is a notion or fancy without sufficient basis. The testimony of the two witnesses, as quoted, is not of much aid. The first stated that the article had no effect on her, but that she believed it and took it to be a fact. The second witness, in answer to a leading question, stated that he believed plaintiff was guilty of an *imagined* affair with another man. It is possible, however, that others may construe this language differently so I hesitatingly concur in the result of my brother's opinion.

Toy, J.; took no part in this decision. Potter, J., did not sit.