BOWERMAN v. DETROIT FREE PRESS.

1. LIBEL AND SLANDER—JUDICIAL PROCEEDINGS—PRIVILEGE—MISTAKE.

Privilege to report judicial proceedings applies only to a correct report of such proceedings even though the inaccuracy contained in the publication is the result of a mistake.

2. SAME—JUDICIAL PROCEEDINGS—HONEST MISTAKE—MITIGATION OF DAMAGES—EVIDENCE.

The fact that the inaccuracy contained in the publication of the report of a judicial proceeding is the result of an honest mistake may possibly be shown by defendant in mitigation of damages, but the honesty of the mistake does not justify the defamation, especially where the subject-matter of the report is not one in which the public interest is involved.

3. SAME—NEWSPAPERS—REPORT OF JUDICIAL PROCEEDINGS—SCOPE OF QUALIFIED PRIVILEGE.

A libelous statement, made by a newspaper in the report of a judicial proceeding, must have been in fact made in the judicial proceeding in order that its publication fall within such qualified privilege as may be enjoyed by a newspaper, as such privilege does not justify inaccurate reports.

4. APPEAL AND ERROR—LIBEL AND SLANDER—UNCHASTITY—STATUTES—PRIVILEGE—NEWSPAPERS.

Since claimed libel of unchastity on part of a married woman, contained in an inaccurate report of a criminal proceeding against a physician on charge of having performed an illegal operation on plaintiff, was not authorized by statute affording protection to newspaper reporters, editors, publishers or proprietors from action for libel which might be contained in a fair and true report of any public proceeding but no protection as to libel contained in matter added by such persons, nor privileged at common law, decision on question of whether statute treats of a qualified or an absolute privilege is unnecessary (3 Comp. Laws 1929, § 14469, as amended by Act No. 279, Pub. Acts 1931).

5. TRIAL—ADMISSIONS—SUBSEQUENT TRIAL.

   Judicial admissions made in one trial, in order to be binding upon a second trial, must have been intelligently made as a fact, and not merely to expedite the particular proceeding.

6. SAME—TRANSCRIPT OF FIRST TRIAL—EVIDENCE—ADMISSION—SUBSEQUENT TRIAL.

   Statement of plaintiff's counsel in first trial of action for libel against newspaper publisher and its local distributor in which he said latter was included as defendant but that plaintiff proposed only to ask the jury for nominal damages against him *held*, not an admission of any material evidential fact on the question of damages but merely procedural strategy, hence transcript of former proceedings, including such statement, was neither admissible as evidence in second trial nor a binding judicial admission therein.

7. NEW TRIAL—CASE TRIED AS IF NOT TRIED BEFORE.

   On new trial being granted, case is tried as if it had not been tried before, and without prejudice to either party.

8. TRIAL—SUBSEQUENT TRIAL—ESTOPPEL.

   Exclusion of proffered transcript of proceedings of former trial of plaintiff's action for libel against newspaper publisher and its local distributor, which included statement of plaintiff's counsel that although local distributor was included as a defendant plaintiff sought only nominal damages from him *held*, not to have permitted plaintiff to take a position inconsistent with that assumed on first trial, the theory of recovery being the same, especially since plaintiff was unsuccessful in maintaining position on former trial.

9. ESTOPPEL—POSITION TAKEN AT FORMER TRIAL.

   In order to work an estoppel of a party by the position he took on a former trial, the position assumed must have been successfully maintained.

10. LIBEL AND SLANDER—NEWSPAPERS—LOCAL DISTRIBUTORS.

   Local distributor of a newspaper, who had no knowledge that it contained libelous matter and as to whom there were no extraneous facts which should have put him on his guard *held*, not liable in libel action against him and newspaper publisher; nor is he required to check the contents of each issue for libelous matter in order to protect himself against liability for damages.

11. VENUE—LIBEL AND SLANDER—RESIDENT LOCAL DISTRIBUTOR—NONRESIDENT PUBLISHER.

Although local distributor of newspaper was a proper party defendant in action for libel against its publisher where action was brought in county in which local distributor resided, since it is proper to include as defendants all who may be severally, or jointly and severally liable, and to proceed to judgment and execution according to the liability of the parties, his liability was a matter for determination after a consideration of the facts and law, and jurisdiction over remaining defendant, a corporation whose situs was elsewhere, is not lost by reason of reversal of judgment against the local distributor (3 Comp. Laws 1929, §§ 13997, 14023, 14517).

12. COSTS—REVERSAL AS TO ONE DEFENDANT.

On defendants' appeal in action for libel against newspaper publisher and its local distributor, costs are allowed against publisher upon affirmance of judgment against it but no costs are allowed to or against the local distributor upon vacation of judgment as to him.

Appeal from Lapeer; Cramton (Louis C.), J. Submitted June 14, 1938. (Docket No. 19, Calendar No. 40,041.) Decided February 2, 1939.

Case by Onalee Bowerman against Detroit Free Press, a Michigan corporation, and Roy Stiles for libel. Verdict and judgment for plaintiff. Defendants appeal. Affirmed as to defendant Detroit Free Press. Reversed as to defendant Stiles.

*Geo. W. DesJardins,* for plaintiff.

*Kenneth Murray* (*Cook, Smith, Jacobs & Beake,* of counsel), for defendant Detroit Free Press.

*Paul Marco* (*Cook, Smith, Jacobs & Beake,* of counsel), for defendant Stiles.

BUSHNELL, J.   This is an appeal from a judgment entered upon the verdict of a jury in a libel action,

based upon the publication of a newspaper article quoted in part in our former opinion in this cause. See *Bowerman* v. *Detroit Free Press,* 279 Mich. 480. On the first trial the jury awarded plaintiff substantial damages against defendant Detroit Free Press and nominal damages against defendant Roy Stiles, who was in charge in the city of Lapeer of the circulation of defendant's newspaper. The judgment in the first case was reversed and the cause was remanded for a new trial. The action was again tried upon the same pleadings and judgment was again entered for plaintiff against both defendants in the sum of $1,500.

Defendants took the position at the second trial that the publication of the claimed libelous language was qualifiedly privileged. Privilege to report judicial proceedings applies only to a correct report of such proceedings. *Sweet* v. *Post Publishing Co.,* 215 Mass. 450 (102 N. E. 660, 47 L. R. A. [N. S.] 240, Ann. Cas. 1914 D, 533); *Post Publishing Co.* v. *Moloney,* 50 Ohio St. 71 (33 N. E. 921); *Ballinger* v. *Democrat Co.,* 203 Iowa, 1095 (212 N. W. 557); *Times-Dispatch Publishing Co., Inc.,* v. *Zoll,* 148 Va. 850 (139 S. E. 505); *Mannix* v. *Portland Telegram,* 144 Ore. 172 (23 Pac. [2d] 138, 90 A. L. R. 55) (dictum); *Shiell* v. *Metropolis Co.,* 102 Fla. 794 (136 South. 537) (dictum); Newell, Slander & Libel (4th Ed.), § 456, p. 498; Odgers on Libel & Slander (6th Ed.), p. 259; 1 Cooley, Law of Torts (3d Ed.), p. 445. See, also, *Bathrick* v. *Detroit Post & Tribune Co.,* 50 Mich. 629 (45 Am. Rep. 63). This is true even though the inaccuracy in the publication is unintentional and the result of a mistake. *Ballinger* v. *Democrat Co., supra,* and *Sweet* v. *Post Publishing Co., supra.* The fact that the inaccuracy contained in the publication is the result of an honest

mistake may possibly be shown by the defendant in mitigation of damages, but the honesty of the mistake does not justify the defamation. Appellants cite *Miner* v. *Detroit Post & Tribune Co.,* 49 Mich. 358, in support of their claim of qualified privilege. In the *Miner Case* the defendant's defamatory publication included, perhaps, an incorrect report of a judicial proceeding, but the publication was justified by the court not on the ground that the report was privileged as such but rather that the subject-matter of the defamatory statement was of public interest and the statement was, therefore, qualifiedly privileged. There is no claim in the instant case that a public interest is involved.

Appellants argue that the "occasion and not the language employed determine the privilege," citing *Fortney* v. *Stephan,* 237 Mich. 603, among others. This rule means no more than that we must look to the extrinsic situation and not to the actual words used in order to determine whether the defamation is privileged. The extrinsic circumstances in the instant case are that defendant's newspaper was reporting a judicial proceeding which created a qualified privilege. But, having determined this, an additional step must be taken, namely, the ascertainment of the scope of this privilege. The authorities, *supra,* hold that such privilege does not justify inaccuracies in the published report. The libelous statement must have been in fact made in the judicial proceeding in order that its publication fall within this privilege.

The claimed libel in the instant case was not authorized by the language of Act No. 279, Pub. Acts 1931, amending 3 Comp. Laws 1929, § 14469 (Stat. Ann. § 27.1369), because the proviso of this section excludes "a libel contained in any matter added by

any person concerned in the publication; or in the report of anything said or done at the time and place of the public and official proceeding which was not a part thereof." Since this publication was also not privileged at common law, it is not necessary to consider on this appeal the question raised by appellants as to whether the statute treats of a qualified or absolute privilege.

On the former trial plaintiff's attorney made the following statement:

"*Mr. DesJardins:* I say for the record, Mr. Stiles was included simply because he was the local distributor of the paper and delivered the Free Press in this town. So far as Mr. Stiles is concerned, we propose only to ask the jury for six cents damages."

The trial judge charged the jury accordingly. In *Bowerman* v. *Detroit Free Press, supra,* we held that defendant publisher was thereby denied a fair and impartial trial.

At the second trial defendant Stiles offered in evidence portions of the transcript of the former proceedings which included a part of the cross-examination of plaintiff and the foregoing statement of her counsel. The trial judge refused to permit the transcript to be read to the jury. Appellants now argue that this statement was not only admissible as evidence but that it was binding upon plaintiff as a judicial admission. Neither theory is sound. Plaintiff's attorney did not state as a fact that no damage had been suffered by plaintiff as a result of defendant Stiles' participation in the publication of the libel; he merely relinquished, for the purposes of the first trial, the right to any more than nominal damages against Stiles.

"Judicial admissions made in one trial, in order to be binding upon a second trial, must have been intelligently made as a fact, and not merely to expedite the particular proceeding." *Mitchell* v. *Reolds Farms Co.,* 268 Mich. 301, 307.

The statement did not admit any material evidential fact on the question of damages but was apparently merely procedural strategy. The remarks in *Kruk* v. *Railway Co.,* 249 Mich. 685, are applicable:

"Upon a new trial, a case is tried as if it had not been tried before and without prejudice to either party. * * * When a new trial was ordered, the parties started out from their pleadings."

In excluding the proffered evidence the trial court was not permitting plaintiff to take a position inconsistent with that assumed by her on the first trial. Her theory of recovery was the same in both.

Assuming that estoppel might otherwise exist, appellants are not in a position to assert the same now because they did not rely upon plaintiff's counsel's statement at the first trial. On the contrary, they claimed that reversible error was committed by the making of the statement and successfully appealed from the judgment rendered.

"In order to work an estoppel, the position assumed in the former trial must have been successfully maintained." *Kruk* v. *Railway Co., supra.*

See, also, *Gott* v. *Judge of Superior Court of Detroit,* 42 Mich. 625, and *Shippy* v. *Village of Au Sable,* 85 Mich. 280.

This court, on its own motion, requested counsel to brief the following question:

Can defendant Stiles, a local distributor in Lapeer of defendant Detroit Free Press, be required to respond in damages as a joint tortfeasor for the

circulation of an alleged libel in the absence of proof of his knowledge of the libel?

Plaintiff says this question must be answered in the affirmative because of our former decision in this case. See *Bowerman* v. *Detroit Free Press, supra.*

Defendants, citing 17 R. C. L. p. 386 and 37 C. J. p. 15, say that, in the absence of a showing of want of knowledge by the distributor that the newspaper contained libelous matter, he must be held equally liable with the publisher.

In *Street* v. *Johnson,* 80 Wis. 455 (50 N. W. 395, 14 L. R. A. 203, 27 Am. St. Rep. 42), it is said:

"The authorities are to the effect that the mere seller of newspapers is not liable for selling and delivering a newspaper containing a libel upon the plaintiff if he can prove upon the trial to the satisfaction of the jury that he did not know that the paper contained a libel; that his ignorance was not due to any negligence on his part; and that he did not know, and had no ground for supposing, that the paper was likely to contain libelous matter. *Emmens* v. *Pottle,* L. R. 16 Q. B. Div. 354 (53 L. T. 808, 55 L. J. Q. B. 51); *Regina* v. *Judd,* 37 Week. Rep. 143; *Chubb* v. *Flannagan,* 6 Car. & P. 431 (172 Eng. Rep. 1307); *Smith* v. *Ashley,* 11 Met. (52 Mass.) 367 (45 Am. Dec. 216)."

See, also, *Staub* v. *Van Benthuysen,* 36 La. Ann. 467.

Stiles testified that he was in the confectionery and newspaper business and the agent in Lapeer for defendant Free Press and another newspaper. He supervised the distribution of newspapers by local carriers, collected for their sale, and remitted to the publishers. He said:

"I didn't really read the article, exhibit A, until after the sheriff served the paper on me. When the

sheriff gave me the paper was the first time the article itself was actually called to my attention.''

On cross-examination he stated:

''I have been the agent for The Detroit Free Press 23 years. I never look at the papers first to see what they put in it. I let them take that responsibility.''

The question we are now discussing was not raised in the former case. We there stated the general rule that all persons who cause or participate in the publication of libelous or slanderous matter are responsible for such publication, et cetera, citing 37 C. J. p. 12, 17 R. C. L. p. 429; *Grinnell* v. *Cable-Nelson Piano Co.,* 169 Mich. 183, and other authorities. We also said that ''all actively connected with and engaged in the publication of a libel are responsible for the results,'' citing *Johnson* v. *Gerasimos,* 247 Mich. 248, 252.

Stiles' sole connection with the affair was to see that the newspapers were distributed in Lapeer after their arrival from Detroit. The rule applying to such a situation is found in 37 C. J. p. 15, where it is said:

''It is a good defense for a vendor or distributor of a newspaper or periodical to show that he had no knowledge of the libelous matter and that there were no extraneous facts which should have put him on his guard. But such vendor or distributor is liable if he had knowledge that the newspaper contained libelous matter.''

If defendant Stiles had an active part in the publication of a libel with knowledge of its nature, he should respond in damages. In these days of speedy dissemination of news it seems unreasonable to hold that a local distributor of newspapers should

be required to check the contents of each issue for libelous matter in order to protect himself against liability for damages.

Under the circumstances in this case the judgment against defendant Stiles cannot be sustained.

He was a proper party defendant in an action commenced in the county where he resided, 3 Comp. Laws 1929, § 13997, as amended by Act No. 255, Pub. Acts 1931 (Stat. Ann. § 27.641); his liability, however, was a matter for determination after a consideration of the facts and law. It is proper to include as defendants all "who may be severally, or jointly and severally liable, and to proceed to judgment and execution according to the liability of the parties." 3 Comp. Laws 1929, § 14023 (Stat. Ann. § 27.667).

"In any action against two or more defendants, judgment may be rendered for the plaintiff against some one or more of the defendants." 3 Comp. Laws 1929, § 14517 (Stat. Ann. § 27.1443).

Jurisdiction over the remaining defendant is not lost by reason of the reversal of the judgment as to Stiles. *Fisher* v. *Rumler,* 239 Mich. 224.

The judgment is vacated as to defendant Stiles and affirmed as to defendant Detroit Free Press. Costs to appellee as against defendant Detroit Free Press, but with no costs to or against defendant Stiles.

BUTZEL, C. J., and WIEST, SHARPE, POTTER, CHANDLER, NORTH, and MCALLISTER, JJ., concurred.