Allen, P. J.
 

 On May 30, 1973, a jury rendered a verdict in favor of plaintiff against American Aggregates, defendants-appellants, and the Ernst Fuel & Supply Company and its driver, Clyde Hall, in the amount of $800,000; $350,000 was awarded to plaintiff as administrator of the estate of Larry Sexton. On November 28, 1973, defendants’ motions for a new trial and/or a judgment notwithstanding the verdict was denied. GCR 1963, 527 and 515.2. Ernst and Hall subsequently paid $637,500 to plaintiff in satisfaction of plaintiffs claim against them. The Hall and Ernst appeals were dismissed August 2, 1974, and American Aggregates, hereinafter referred to as defendant, remains as the only appellant.
 

 This appeal involves three questions: first, whether in light of the evidence, the trial court erred in instructing the jury on the "volunteer” theory, 2 Restatement Torts 2d, § 324A, p 142, and 57 Am Jur 2d, Negligence § 74, pp 424-425; second, whether the trial court erred in denying
 
 *527
 
 defendant’s motion for a directed verdict on the grounds that the evidence was insufficient to support a finding that defendant’s alleged negligence was the proximate cause of plaintiffs damages; third, whether the trial court erred in failing to accept the jury’s initial verdict of $700,000 against Hall and the Fuel Company, and $50,000 against defendant and in instructing the jury to return a verdict in the form of a single sum as to the defendants and a separate amount for each plaintiff.
 

 The first issue deals with the following jury instruction:
 

 "Let me say with respect to the defendant, American Aggregates, that having chosen to act and having chosen to warn, I charge that defendant, American Aggregates, had the duty to use reasonable care to so warn those lawfully using the streets or highways thereabouts.”
 

 Defendant was the owner of a gravel pit which bordered on Kensington Road in Livingston County. It built and maintained a private road which led from its pit and loading area to Kensington Road. Truck drivers gained access to and exited from defendant’s property via this private road. On February 20, 1969, Hall, the driver of an Ernst Fuel & Supply Company truck, failed to stop at the intersection of this private road and Kensington Road, and collided with a pick-up truck driven by Henry M. Carter, who was returning the two deceased young men, Delmus, Jr., who was almost 16, and his younger brother Larry, who was 13, after they had stayed after school to watch a basketball game. Mr. Carter was the father of one of their friends, who also was a passenger in the pick-up on the night in question. This accident
 
 *528
 
 occurred at about 7 p.m. on February 20, 1969, and all four occupants of the vehicle were killed.
 

 Defendant’s claim is premised on the assertion that the evidence failed to show that defendant chose to act and chose to warn drivers, and in particular Hall, to stop at the intersection of the private road and Kensington Road. While the defendant’s knowledge of the truck driver’s failure to stop at the intersection is relevant to issue number two, it also provides some assistance on this point. State Police Trooper Richard Mundy testified that at least three or four times in a two-year period previous to February 20, 1969, he advised the weighmaster at defendant’s weigh station that truck drivers were not stopping at the intersection. He gave many traffic tickets to drivers who violated their duty to stop, and so advised defendant’s weighmaster. There was a gate located approximately 75 to 100 feet from the intersection, and two stop signs, one on each side of the private road, were located about 20 feet from the edge of the intersection. Trooper Mundy stated that the signs were posted by American Aggregates.
 

 Clyde Hall, the driver of the tractor-trailer involved in the accident, testified that he could not "honestly say” whether or not an agent or employee of defendant had told him to stop at the intersection, although he did testify that the other drivers told him to do so and that "perhaps the dispatcher” did the same. In particular, Hall remembered one conversation which occurred about six months previous to the accident in which this subject was discussed, and Hall testified that "possibly” the weighmaster had warned him to stop before entering Kensington Road. However, Hall testified that he never paid any attention to the gate, nor did he view the stop signs as a relevant
 
 *529
 
 factor in determining whether or not to stop before entering Kensington Road. Apparently, he and the other truck drivers felt it necessary to have a "running start” out of defendant’s private road onto Kensington Road and, in turn, up the hill which faced them as they turned left onto Kensington Road. An eyewitness to the accident, a person traveling in his own vehicle on Kensington Road, testified that Hall’s tractor-trailer was traveling at a rate of about 15 miles per hour as it entered the intersection. Trooper Mundy estimated the speed to be about five miles per hour, and Hall and defendant’s expert witness testified that the speed was probably four to five miles per hour as Hall entered the intersection.
 

 Ray v Transamerica Insurance Co,
 
 46 Mich App 647, 657; 208 NW2d 610 (1973), adopted the rule of 2 Restatement Torts 2d, § 324A, p 142, which states:
 

 "One who undertakes, gratuitously or for consideration to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
 

 "(a) his failure to exercise reasonable care increases the risk of harm, or
 

 "(b) he has undertaken to perform a duty owed by the other to the third person, or
 

 "(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.”
 

 While
 
 Ray
 
 stated that reliance was a crucial factor in this theory, Chief Judge Lesinski dissented on the grounds that reliance was inapplicable to that situation, and his view has prevailed.
 
 Olkowski v Aetna Casualty & Surety Co,
 
 53 Mich App 497,
 
 *530
 
 500-502; 220 NW2d 97 (1974),
 
 aff'd,
 
 393 Mich 758 (1974).
 

 Although meager, the record before us supports the trial court’s action in instructing the jury that once defendant chose to act and chose to warn, it had a duty to use reasonable care in the exercise of that action. Clyde Hall testified that it was possible that defendant’s weighmaster advised him to stop previous to entering the intersection, and American Aggregates did place stop signs on either side of the driveway.
 
 Ray
 
 noted that one must actively undertake to provide the service and duty at issue. It must be shown that defendant exercised some action in order that the above rule will come into play. 46 Mich App at 654. We find that the record in our case has disclosed some action on the part of defendant to make sure that vehicles exiting from its road onto Kensington Road do so safely and without endangering those using Kensington Road. Therefore, the trial court properly instructed the jury that having chose to act and chose to warn, defendant had the duty to use reasonable care in the exercise of those actions.
 

 Defendant next claims that the trial court erred in denying its motion for directed verdict on the grounds that the evidence was insufficient to support plaintiff’s claim that defendant’s alleged negligence was a proximate cause of plaintiff’s damages. Both parties have acknowledged the discussion in
 
 Johnston v Harris,
 
 387 Mich 569, 573-574; 198 NW2d 409 (1972), that one’s intervening or superseding acts will not relieve a defendant of liability if the likelihood of that third person’s actions is reasonably foreseeable. However, each party differs on the argued application of the rule to the case before us.
 

 In reviewing a claim that a motion for directed
 
 *531
 
 verdict was erroneously denied, the Court must view evidence in a light most favorable to plaintiff. If, when doing so, the Court determines that there is "any evidence which was competent and sufficient to support the jury’s determination”, the jury’s resolution of the case should be affirmed.
 
 Kupkowski v Avis Ford, Inc,
 
 51 Mich App 668, 670; 215 NW2d 767 (1974),
 
 lv granted,
 
 392 Mich 806 (1974), and cases cited therein. See also,
 
 Wilhelm v Detroit Edison Co,
 
 56 Mich App 116, 126; 224 NW2d 289 (1974). As stated in
 
 Price v Manistique Area Public Schools,
 
 54 Mich App 127, 132-133; 220 NW2d 325 (1974),
 
 lv den,
 
 393 Mich 753 (1974), an intervening cause, such as Clyde Hall’s failure to stop at the intersection, will not "sever” the connection between the plaintiffs damages and defendant’s negligence if Hall’s action "was reasonably foreseeable”.
 
 Price
 
 also referred to 2 Restatement Torts 2d, § 447, p 478 and the general principle of intervening cause found in
 
 Johnston v Harris, supra,
 
 in particular the statement that:
 

 "If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby.” 54 Mich App at 133, quoting from 387 Mich at 574.
 

 Viewing the evidence in a light most favorable to plaintiff, we have found that the evidence was sufficient to create a question for the jury as to whether or not Clyde Hall’s failure to stop before proceeding onto Kensington Road was reasonably foreseeable by defendant. Trooper Richard Mundy testified that at least three or four times within the two-year period previous to February 20, 1969,
 
 *532
 
 he had advised the defendant’s weighmaster that the gravel truck drivers were disregarding their duty to stop before entering Kensington Road from defendant’s private road. He testified that after this complaint was made, the drivers’ failure to stop would "die down” but would then "pick up” again after this brief respite. Clyde Hall testified that he remembered one conversation in particular held in the presence of defendant’s dispatcher in which other drivers discussed the action by the State Police in issuing traffic tickets for failure to stop before entering Kensington Road. It is clear that Hall failed to stop before entering the highway in violation of MCLA 257.652; MSA 9.2352. Hall testified that he had probably entered Kensington Road without stopping in about 150 of his 400 trips out of defendant’s private road. Defendant knew that the drivers were failing to stop, and we find that it was reasonably foreseeable that one of them might do so again. See
 
 Samson v Saginaw Professional Building, Inc,
 
 393 Mich 393, 402-405; 224 NW2d 843 (1975). The trial court properly denied defendant’s motion for directed verdict. This question of proximate cause was one for the jury, and defendant’s claim is without merit.
 

 Upon its return from deliberations, the jury announced a verdict of $50,000 against American Aggregates, and $700,000 against Hall and his employer, Ernst Fuel Company. The trial court told the jury that the form of the verdict was unacceptable, and said that there had to be a single sum as to one or all of the defendants. The jury returned to the jury room, and defendants Hall and the Fuel Company made a motion for mistrial on the grounds of a defective verdict. Defendant American Aggregates expressed approval of the verdict, and counsel said that he was
 
 *533
 
 under the impression that one of the standard jury instructions (perhaps MSJI-Civil, 41.04 and 45.03, Form 7) allowed the jury to consider the respective liability of each defendant. The trial court stated that this situation, involving concurrent acts of negligence, precluded such an instruction, and that the jury was not authorized to render such a verdict. The court told counsel that it would instruct the jury that it had to return a separate verdict for each plaintiff and that it could not apportion damages among the defendants. American Aggregates’ counsel then moved for mistrial and asked for an instruction that the jury not be bound by its first verdict regarding defendant’s liability. Such an instruction was not given. The jury was returned to the courtroom, instructed pursuant to the judge’s previous statement, and 20 minutes later returned a verdict in the amount of $350,000 for Delmus, Jr., and $450,000 for Larry against both defendants. The jury rendered a verdict of no cause of action as far as the Carter estate was concerned.
 
 [1]
 

 Generally, "those whose negligence concurrently causes a single indivisible injury are jointly and severally liable”. 11 MLP, Negligence, § 6, p 411. As was stated in Anno:
 
 Propriety and Effect of Jury’s Apportionment of Damages As Between Tortfeasors Jointly and Severally Liable,
 
 46 ALR3d 801, § 3, p 808, the "traditional and overwhelming weight of authority” is that damages may not be apportioned among tortfeasors who are jointly and severally liable.
 
 Naccarato v Grob,
 
 384 Mich 248, 255-256; 180 NW2d 788 (1970), cited by
 
 *534
 
 defendant in support of its contention that the jury could have properly apportioned the damages, is inapplicable to our situation. There, the two defendant doctors in a medical malpractice case treated plaintiff at different times, and the Supreme Court agreed that the second doctor should only be liable for that portion of the damages which resulted after he began treating plaintiff. 384 Mich at 255. As noted at MSJX-Civil, 41.05, Comment, a jury may apportion damages if the injuries are "factually separable and can be allocated between defendants with reasonable certainty”.
 
 Rodgers v Canfield,
 
 272 Mich 562; 262 NW 409 (1935), another medical malpractice case involving two physicians, was cited for that proposition.
 

 On the other hand, MSJI-Civil, 41.06, Comment, citing
 
 Bowerman v Detroit Free Press,
 
 279 Mich 480; 272 NW 876 (1937), states "A jury may not apportion damages between joint tortfeasors”. In
 
 Bowerman,
 
 a libel action, plaintiff had claimed only six cents damages against the Detroit Free Press’ circulation manager, while claiming a substantial amount of damages against the newspaper itself. The Court agreed with the newspaper’s argument that it was denied a right to fair trial by plaintiff’s action making the circulation manager a joint defendant merely to obtain jurisdiction in Lapeer County and then proceeding to the jury with a claim for only nominal damages against the manager while proceeding with a claim for substantial damages against the non-resident newspaper. The suit involved a single instance of libel, and plaintiff chose to proceed against two defendants as joint tortfeasors. The Court referred to the general rule that although "one of several joint tortfeasors may have been more actively at fault
 
 *535
 
 than others”, the defendants are jointly and severally liable (where apportionment is not allowed), and held that the trial court erred in allowing the jury to "assess damages for this single tort in varying amounts against the different defendants”. 279 Mich at 489, 491.
 

 The significant question in determining whether or not the jury could properly apportion damages where the defendants were jointly and severally liable is whether plaintiff’s injury is indivisible.
 
 Maddux v Donaldson,
 
 362 Mich 425; 108 NW2d 33; 100 ALR2d 1 (1961), a successive impact automobile negligence case, referred to the general rule that:
 

 "Where the negligence of two or more persons concur in producing a single, indivisible injury, then such persons are jointly and severally liable, although there was no common duty, common design, or concert action.” 362 Mich 433, quoting from 1 Cooley, Torts (3d ed), p 247.
 

 As was stated in
 
 Cuddy v Horn,
 
 46 Mich 596, 603-604; 10 NW 32; 41 Am Rep 178 (1881), a case involving a collision of two boats in the Detroit River in which a passenger on one of the boats was killed:
 

 "An act wrongfully done by the joint agency or cooperation of several persons will render them liable jointly or severally. The injury done in this case resulted from a collision caused by the contemporaneous act of two separate wrong-doers, who, though not acting in concert, yet by their simultaneous wrongful acts put in motion the agencies which together caused a single injury; and for this the injured party could receive but a single compensation.”
 

 Plaintiff suffered one indivisible injury. It resulted
 
 *536
 
 from the forces set in motion by the negligence of both defendants. Unlike the medical malpractice situation present in
 
 Naccarato, supra,
 
 the defendants herein did not inflict separate injuries upon plaintiffs decedents at separate times.
 

 Kearney v Clutton,
 
 101 Mich 106; 59 NW 419; 45 Am S R 394 (1894), involved an action in trover for the conversion of certain goods which plaintiff had pledged as security for a chattel mortgage. Plaintiff had maintained her action against three defendants, upon one of whom the Supreme Court felt the evidence did not justify the imposition of liability. In any event, the jury returned a verdict of $500 against the first defendant, and $150 apiece against the remaining two. The trial court, pursuant to plaintiffs objection, instructed the jury to return with a correct verdict, and the jury returned with a verdict for $800 against all three defendants jointly. 101 Mich at 108.
 
 Kearney
 
 held that the trial court did not err in instructing the jury to return a verdict against all defendants jointly. The Court said that defendants were either jointly liable or they were not liable. The Court stated "There was no testimony by which the jury could determine that each defendant converted a portion of the goods”. 101 Mich at 112. Likewise, defendants herein were jointly and severally liable, and we find that the trial court properly instructed the jury to return with a verdict in the correct form.
 

 Defendant has urged the Court to adopt the rule of "relative fault”, set forth in
 
 Dole v Dow Chemical Co,
 
 30 NY2d 143; 331 NYS2d 382; 282 NE2d 288; 53 ALR3d 175 (1972).
 
 Dole
 
 held that liability may be apportioned between joint tortfeasors based upon the idea of "relative fault”. As noted in Anno:
 
 Contribution or Indemnity Between Joint
 
 
 *537
 

 Tortfeasors on Basis of Relative Fault,
 
 53 ALR3d 184, § 1, p 187, relative fault:
 

 "connote[s] a percentage comparison of the extent to which the tortious acts or omissions of two or more persons were causally responsible for an injury to the person or property of another.”
 

 This theory is apparently a modern development utilized in the courts of Wisconsin, New York, Maine, and the Virgin Islands, 53 ALR3d 184, § 2, p 192, as well as the four jurisdictions which have apparently adopted the "Uniform Contribution Among Tortfeasors Act”, Arkansas, Delaware, Hawaii, and South Dakota. 53 ALR3d 184, § #, p 197. Michigan has not adopted that act.
 

 By statute, joint tortfeasors are liable for their pro rata share of the damage award, and a joint tortfeasor who has paid more than his pro rata share may maintain an action for contribution with respect to the excess paid over and above his respective share. MCLA 600.2925(1); MSA 27A.2925(1). This provision would seem to preclude our adoption of the "relative fault” theory. This theory of relative fault is somewhat analogous to the theory of comparative negligence, which apparently applies to allow a plaintiff to recover if his contributory negligence is only "slight” in comparison to defendant’s negligence. While some members of the Michigan Supreme Court would like to adopt the theory of comparative fault and substitute it for the doctrine of contributory negligence,
 
 Vanderah v Olah,
 
 387 Mich 643, 654-661; 199 NW2d 449 (1972) (Williams, J. with Swain-son, J. concurring), this doctrine has not been established in Michigan.
 
 Parsonson v Construction Equipment Co,
 
 386 Mich 61, 78-79; 191 NW2d 465 (1971), refused to apply the doctrine of "compara
 
 *538
 
 tive causation”. Additionally, two of the justices felt that the doctrine of comparative negligence should be adopted, if at all, by the Legislature rather than the Court. 386 Mich at 80-83 (Black, J. concurring). In view of MCLA 600.2925; MSA 27A.2925, and the Supreme Court’s treatment of the similar theory of comparative negligence, we find that the question of whether or not Michigan should become a "relative fault” state should be better addressed to either the Supreme Court or the Legislature.
 

 Affirmed.
 

 [1]
 

 The Court is cognizant of the fact that the corrected verdict totaled $800,000, whereas the initial verdict involved the sum of $750,000. However, the November 28, 1973 judgment was entered in the total amount of $750,000; $400,000 for Larry Sexton and $350,000 for Delmus Sexton, Jr.