George JORAE and Frances Jorae, Plaintiffs,

v.

The CLINTON CROP SERVICE, a Division of Smith-Douglas, a Division of Borden Chemical, Division of Borden, Inc., a Foreign Corporation, and John Blue Company, a Division of Subscription Television, Inc., a Foreign Corporation, Defendants.

Civ. A. No. 7–72165.

United States District Court, E. D. Michigan, S. D.

Jan. 23, 1979.

Gregory W. Stine, Detroit, Mich., Morton Leitson, Flint, Mich., for plaintiffs.

Thomas M. Jinks, Troy, Mich., for the Clinton Crop Service.

Wayne D. Gardner, Farmington Hills, Mich., for John Blue Co.

MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This is a products liability case. Plaintiff, George Jorae, is a farmer. Plaintiff, Frances Jorae, is his wife. Defendant and cross-plaintiff, Clinton Crop Service, is a corporation engaged in the business of renting agricultural sprayers to farmers in and around St. Johns, Michigan. Defendant, John Blue Company, is the designer, manufacturer, and seller of an agricultural sprayer which Clinton Crop Service leased to George Jorae. By their motions for entry of judgment on a special verdict returned in this case, the parties have raised the issues of: (1) whether Pub.Act No. 495, (Dec. 11, 1978) ("Act 495"), which amends M.C.L.A. § 600.5805 and adds M.C.L.A. §§ 600.2945–2949, applies to this case and, if so, (2) how Act 495 applies to this case. It is this court's holding that Act 495 does apply to this case and that judgment should be entered in accordance with the terms of the Act as interpreted in this memorandum opinion and order.

On or about June 21, 1975, the plaintiff rented the agricultural sprayer in question from Clinton Crop Service for the purpose of spraying his cornfield. The next day, while in the course of climbing on the sprayer to load it, plaintiff slipped and fell astraddle a narrow bar projecting from the sprayer. As a result of this fall plaintiff suffered a serious injury to his reproductive organs.

On September 8, 1977, plaintiffs filed a lawsuit seeking damages against defend-

954

ants for negligence in the design of the sprayer and in failure to warn and inform and for breach of their respective implied warranties of fitness. Clinton Crop Service subsequently filed a counterclaim against John Blue for indemnity on each of plaintiffs' theories of recovery which has been treated throughout as an additional alternative claim for contribution. The parties began trial in the case on December 11, 1978. During the course of preparing jury instructions, the court and the parties became aware of the enactment and signing into law of Act 495. In light of the potentially significant effect of Act 495 on the law to be applied in the case, eight special interrogatories were submitted to the jury after they had been given comprehensive instructions on all the other applicable law, in lieu of requesting a general verdict. These interrogatories were designed to elicit all the findings necessary to enter judgment once the significance, if any, of the new legislation had been determined.

Until the enactment of Act 495, products injuries were litigated on several theories set out in several counts of the complaint. Usually the injured person complained in tort alleging that the manufacturer and sometimes the seller were negligent in some respect. The negligence could be in the design of the product, in its manufacture or in some act on the part of the manufacturer or seller resulting in a failure to give adequate warning or instruction. Sometimes either the seller or the manufacturer made express commitments as to performance of the product that were breached and the breach of these express commitments were claimed to be a basis of liability, presumably on a contract theory. Because products were received as a part of a sale, the implied warranties of the Sales article of the UCC were often invoked as a theory of liability. A modified version of the seller's warranty of fitness for purpose and of merchantability has been for many years a basis of liability in products cases. Liability under such theories is a type of absolute liability imposed by law and not by agree-

ment and thus in theory appears to be more like a tort.

Act 495 appears to be an attempt on the part of the Michigan legislature to provide a comprehensive set of rules for the trial of cases involving injuries caused by products that are in some way inadequate or defective.[1] It appears that the statute is an attempt to cut across the three theories on which cases have been tried until now and to provide a common defense to all theories. The first substantive section of the Act, § 2945, defines "products liability action" to mean "an action based on *any* legal or equitable theory of liability brought for or on account of death or injury to person or property caused by" various acts done in connection with the conception, production, and marketing of products. (*emphasis added*). This definition encompasses all possible theories of recovery in products liability cases, including negligence, breach of express and implied warranty and strict liability to the extent this may be recognized. The Act unifies them into a single theory of recovery called "products liability" for purposes of the application of the balance of the Act.

The following three sections of the Act, §§ 2946, 2947, and 2948, form a functional unit balancing the admission and exclusion of certain types of evidence in products liability actions. The fifth substantive section of the Act, § 2949, establishes a distinctly new legal standard for assessing the affect an injured party's own negligence shall have on his or her right to recovery in a products liability case. Rather than being a total bar to recovery § 2949 provides that in all products liability actions the damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to that plaintiff. Section 2949 also provides, in a second subsection, that costs and reasonable attorney's fees may be awarded to the prevailing party in a products liability action in the event that the court determines a claim or defense to be frivolous.

1. See Appendix I attached to this Memorandum Opinion and Order.

Finally, § 5805 of the Act amends, M.C. L.A. § 600.5805 to specifically provide for a three year statute of limitations for the products liability action. This period is established subject to the proviso that the plaintiff shall be required to prove a *prima facie* case without the benefit of any presumption in the case of a product which has been in use for not less than ten years.

█ It is evident from the range of perspectives, detail and organization of this Act that the legislature intended to do more than simply alter the legal significance of contributory negligence or improve upon a few random rules of evidence. Act 495 is an indication of the legislature's awareness that a functionally integrated area of law has developed concerning injuries caused by defective products through the use of diverse legal theories that permit different proofs as to both claims and defenses which could, in turn, lead to different results. The Act is the legislature's attempt to simplify and unify this area of law by formally acknowledging and organizing it and thereby freeing it, to a certain degree, from the strained analogies to negligence and contract.

The Act states a legislative directive to present a products liability case in one count, alleging the defendants' wrongdoing by way of negligence or breach of warranty express or implied, permits the defendant to use the negligent acts of the plaintiff as a partial defense, and provides standards for the admission of proof applicable to all claims and defenses.

*Applicability of Act 495.*

The first issue presented by the parties is whether Act 495 applies to this case. The Act's effective date is December 13, 1978. This trial began December 11, 1978. The case was submitted to the jury on December 15, 1978, and the jury returned with its answers on December 18, 1978.[2]

The Michigan Supreme Court has stated in a case involving foreclosures of mechanics' liens arising out of construction work that:

[R]emedial statutes, or statutes related to remedies or modes of procedure, which do not create new or take away vested rights, but only operate in furtherance of a remedy or confirmation of rights already existing, do not come within the legal conception of retrospective law, or the general rule against retrospective operation of statutes. To the contrary, the statutes pertaining to procedure are generally held to operate retrospectively, where the statute or amendment does not contain language clearly showing a contrary intention.

*Hansen-Snyder Co. v. General Motors,* 371 Mich. 480, 484–85, 124 N.W.2d 286, 288 (1963). The Court held that a statutory amendment, extending the period for serving notice of intent to claim lien from 60 days to 90 days from the date of first furnishing labor and material, was a procedural amendment encompassed by the rule and that it was, therefore, applicable to plaintiffs' claim.

█ The test in *Hansen-Snyder,* used to determine if a statute should be applied to existing causes of action, is whether the statute is procedural or remedial. A statute is procedural or remedial if it relates to remedies or modes of procedure which do not create new or take away vested rights but only acts in furtherance of a remedy or confirmation of rights already existing. If the statute is determined to be procedural, it may be applied to existing causes of action unless the statute contains language clearly showing a contrary intention.

Even before the *Hansen-Snyder* case was decided, the Court had applied the elements of the rule stated in that case to statutory amendments of a remedial nature. In *Rookledge v. Garwood,* 340 Mich. 444, 65 N.W.2d 785 (1954), the Court held that a plaintiff in an employment-related personal injury action was not required to elect between workmen's compensation benefits or an action against a third party tortfeasor pursuant to the terms of the workmen's compensation act in effect at the time the

---

**2.** See Appendix II attached to this Memorandum Opinion and Order.

injury occurred but could proceed against the third party tortfeasor and also collect workmen's compensation benefits pursuant to an amendment to the Act which became effective between the time the plaintiff was injured and the time he filed suit. This holding was based on the Court's conclusions that the amendment was remedial in nature, did not impair vested or substantive rights, and did not indicate by its terms that it was to be applied prospectively only.[3]

■ The Court in *Rookledge* stated that a statute would be considered remedial in nature if it was designed to correct an existing law, redress an existing grievance, or introduce regulations conducive to the public good. *Rookledge, supra* at 453, 65 N.W.2d 785. Act 495 satisfies this characterization of a remedial statute. The Act corrects existing law by imposing order on a tangled collection of strained analogies to tort and contract theories of recovery. Furthermore, the Act redresses existing grievances by imposing a common way of evaluating the legal affect of an injured party's contributory negligence on his or her right to recovery upon all the various theories used to recover in a products liability case. By requiring that a plaintiff's recovery under any theory in a products liability case be diminished by the amount of his or her contributory negligence, the past injustice to plaintiff in negligence cases of having a relatively minor act of negligence create a complete bar to any recovery is eliminated. The past injustice to defendant of having different legal consequences arise from the same act of contributory negligence, depending upon whether the plaintiff was suing under the theories of negligence or implied warranty, is also eliminated. Given the effect of Act 495 there can be no doubt that it is a remedial act. Having determined that the Act is remedial, it is necessary to examine the question of whether it creates new or takes away vested rights.

The Court in *Rookledge* considered vested rights to be interests:

which it is right and equitable that the government should recognize and protect, and of which the individual could not be deprived arbitrarily without injustice.

*Rookledge, supra* at 456, 65 N.W.2d at 791 (*citing Wylie v. City Commission of Grand Rapids*, 293 Mich. 571, 292 N.W. 668 (1940). Pursuant to this standard, the Court found that the defendant third party tortfeasor did not have a vested right in the statutory defense accorded under the prior version of the workmen's compensation act. As was the case in *Rookledge*, Act 495 in this case does change the law by changing the legal consequences attendant upon a finding of contributory negligence. In addition, as in *Rookledge*, Act 495 does not create liability for acts which were not previously a basis for liability or eliminate a defense upon which the defendants were entitled to rely at the time events took place giving rise to their liability. However, unlike the amendment in *Rookledge*, Act 495 does not totally eliminate a defense which was available to the defendants and upon which they relied at the time of trial. Act 495 merely modifies the scope of the defense from a complete bar to one aspect of plaintiffs' recovery to a diminution of plaintiffs' recovery as to all theories of plaintiffs' case. Since the adjustment of the legal rights of the parties in this case is not even as substantial as the adjustment imposed in *Rookledge*, Act 495 cannot be said to impair vested rights.

The Act also acts in furtherance of the existing remedies and confirms rights already existing. Before the passage of Act 495 plaintiff had the right to recover for the negligence of defendants which caused him injury unless he was negligent himself in which case no recovery was allowed. However, the plaintiff's right of recovery under a warranty theory did not depend on his negligent act. The Act furthers the remedy of the plaintiff by eliminating contributory negligence as an absolute bar, while at the same time providing to the defendant a reduction in the amount of

---

3. *Accord, Lahti v. Fosterling*, 357 Mich. 578, 583, 589, 99 N.W.2d 490 (1959).

recovery dependent upon the proportion of negligence attributed to the plaintiff.

Finally, an examination of the language of Act 495 itself, pursuant to the example of *Rookledge* and *Hansen-Snyder*, reveals no expression of legislative intent that the Act should not be applied to products liability cases pending on the Act's effective date. The legislature gave the Act immediate effect. In light of the foregoing finding, this court concludes that Act 495 is to be applied to this case.

### Affect of Act 495

#### Between Plaintiffs and Defendants

The jury in this case found that both defendants breached an implied warranty, that all parties were negligent except for Mrs. Jorae, and that the injury to Jorae was in the amount of $200,000.00 and to his wife in the amount of $100,000.00. Prior to the effective date of Act 495, plaintiffs would have been precluded from recovering on their theory of negligence by virtue of George Jorae's own contributory negligence, found by the jury in this case to be 22½% of all negligence in the case, yet they would have obtained full recovery on their theory of breach of implied warranty since contributory negligence was not a defense to breach of implied warranty. The defendants, as joint tortfeasors, would have been jointly and severally liable for plaintiffs' damages.

Section 2949 provides that damages shall be diminished in proportion to the amount of negligence attributed to plaintiff in all products liability actions. Since § 2945 defines products liability actions to include *any* legal or equitable theory of liability which satisfies its other specifications, § 2949 by definition requires proportional diminution of recovery under both plaintiffs' claims of negligence and breach of warranty when, as in this case, plaintiff is found to be contributorily negligent.

■ George Jorae was found to be 22.5% negligent by the jury. His recovery, therefore is $155,000. This equals the amount of his damages, $200,000, diminished by 22.5%

or $45,000. Since Mrs. Jorae's claim is solely for loss of consortium and is derived from the wrong done to her husband, her damages must also be diminished. Her recovery is, her damages of $100,000, diminished by 22.5% or $22,500, or $77,500. Apart from the diminution of plaintiffs' damages in proportion to George Jorae's contributory negligence, the joint and several nature of the defendants' liability to the plaintiffs remains unchanged. Act 495 gives no indication that the liability of any one co-defendant to a plaintiff in a products liability case should be determined any differently than it previously was. Therefore the judgment should be entered in favor of Jorae against both defendants for $155,000 and in favor of his wife and against both defendants for $77,500.

#### Between Cross-Plaintiff and Cross-Defendant

■ Cross-plaintiff, Clinton Crop Service, has asserted throughout this lawsuit that it is entitled to indemnity from cross-defendant, John Blue Company, in the event it was held liable for damages. In the event it is not entitled to indemnity, Clinton Crop Service has also claimed during this trial that it is entitled to contribution of every thing it is forced to pay to Jorae in excess of 22.5% of the jury award, the amount the jury found Clinton Crop Service to be negligent. Prior to the effective date of Act 495, Michigan case law provided that indemnity is required only when the charging party can prove that it has been found liable to a third party, not because of any fault of its own, but because of its relationship to the party at fault from whom indemnification is sought. *Minster Machine Co. v. Diamond Stamping Co.*, 72 Mich.App. 58, 248 N.W.2d 676 (1976); *Prosky v. National Acme Co.*, 404 F.Supp. 852 (E.D.Mich. 1975). Since Act 495 does not address the law respecting the establishment of a right of indemnification, Michigan case law is unchanged as to how indemnity claims are to be evaluated.

■ The jury found that cross-plaintiff was negligent and that the negligence was

a proximate cause of the plaintiffs' injuries. The jury also found that cross-plaintiff breached an implied warranty and that the breach was a proximate cause of plaintiffs' injuries. The jury made these findings after specifically being instructed by the court to: "Consider [George Jorae's] claim as to each theory separately and as to each defendant separately." [4] These findings indicate that cross-plaintiff was not without fault in connection with George Jorae's accident under either theory of recovery proven by plaintiffs. Rather, cross-plaintiff was found to have negligently acted or failed to act independently of any acts or omissions of cross-defendant and to have breached its own implied warranty independently of any breach committed by cross-defendant. Given these findings, cross-plaintiff is simply not entitled to indemnification under Michigan law.

As joint tortfeasors (or joint breachers of implied warranties), each defendant had the right to contribution from the other defendant prior to the effective date of Act 495, pursuant to M.C.L.A. § 600.2925a.

The final issue framed by the parties is whether one defendant has a right to contribution from the other defendant pursuant to M.C.L.A. § 600.2925a or whether Act 495 affects the right of contribution and, if so, how.

■ Section 600.2925a provides that when two or more persons become jointly or severally liable in tort for the same injury to a person or property, there is a right of contribution among them limited to any amount paid by any such joint tortfeasor in excess of his or her pro rata share of the total damages. This statute is the most recent of several Michigan statutes which abolished the common law doctrine preventing contribution among joint tortfeasors. The statute " 'rests on the principle that, when parties stand *in aequali jure*, the law requires equality, which is equity, and one of the parties will not be obliged to bear more than his just share of a common burden or obligation to the advantage of his

co-obligors.' " *Caldwell v. Fox*, 394 Mich. 401, 417, 231 N.W.2d 46, 54 (1975), [*citing Comstock v. Potter*, 191 Mich. 629, 637, 158 N.W. 102 (1916)]. Pursuant to § 600.2925a, each defendant has the right of contribution from the other for any amount it is required to pay to each plaintiff in excess of its "pro rata" share of the common liability. M.C.L.A. § 600.2925b specifically directs that "relative degrees of fault shall not be considered" in determining the pro rata share of joint tortfeasors.

■ In spite of the status of Michigan law on contribution among joint tortfeasors, litigants in Michigan courts have from time to time asserted that liability between joint tortfeasors should be apportioned according to each tortfeasor's relative degree of fault for the accident giving rise to the joint liability rather than divided equally among joint tortfeasors. Although this position has found support among various judges and justices, the Michigan judiciary has held that arguments for apportionment of damages between joint tortfeasors should be addressed to the legislature. *Sexton v. American Aggregates*, 60 Mich. App. 524, 536–38, 231 N.W.2d 449 (1975). The legislature has now considered the merits of the doctrine of relative fault and reached an affirmative conclusion as to its implementation in the context of products liability actions only, by enacting Act 495. Unfortunately, the language used by the legislature to implement the doctrine of relative fault in products liability actions is not specific as to the scope of its application. Based on the following considerations, however, this court concludes that the legislature did intend to apportion damages on the basis of relative fault between defendants as well as between plaintiffs and defendants in products liability actions.

The equal division view of contribution established in § 600.2925a is based on the prevailing notion at the time § 600.2925a was enacted that when two or more individuals are responsible for an accident which produces a single indivisible injury, that injury cannot be apportioned amongst the

4. Jury Instructions at 19.

various defendants on any rational basis. *Moyses v. Spartan Asphalt Paving Co.*, 383 Mich. 314, 330, 174 N.W.2d 797 (1970). Apportionment of damages has only been allowed, in keeping with this view, when the injuries are factually separable and can be allocated to the "several" defendants with reasonable certainty. *Sexton, supra*, 60 Mich.App. at 534, 231 N.W.2d 449.

These cases indicate that although apportionment has been the preferable method of dividing liability for damages between defendants it is simply unfair to do so when no authorized rational basis for apportioning exists. When the legislature passed Act 495, it authorized the fact finder by necessary implication to make findings as to the relative fault of the parties for purposes of diminishing a plaintiff's recovery. This grant of authority constitutes an acknowledgement by the legislature of the legitimacy of such findings as a matter of policy. Therefore, the findings of a fact finder as to the relative degrees of fault can also legitimately serve as a heretofore unavailable basis for apportioning damages between joint tortfeasors for a single indivisible injury. This court is forced to conclude that when the legislature made a radical change in policy to remedy the injustices wrought by the common law doctrine of contributory negligence, it did not leave untouched in the same cause of action the corollary injustice manifest in the doctrine of contribution between joint tortfeasors since the very change in policy needed to remedy that latter injustice has been implemented in order to remedy the former injustice.

The language employed by the legislature in Act 495, while nonspecific, is broad enough to include an action for contribution between joint tortfeasors within its ambit. A cross-claim for contribution as to amounts for which a defendant is held liable in a "products liability action" is "a products liability action resulting from . . . injury to person or property . . ." as required by § 2949(i) of Act 495. This is true because it is one part of the overall action initiated by the Joraes which is based on legal and equitable theories for damages on account of injury to property and persons within the contemplation of the definition of products liability actions set forth in § 2945. As such the claim for contribution is subject to the provisions of Act 495 dealing with apportionment of damages according to degree of fault since that section, § 2949, applies by its terms to all products liability actions without regard to any particular phase or claim arising out of the overall action.

More specifically, however, a cross-claim for contribution by either John Blue or Clinton Crop Service can itself be viewed as a products liability action individually subject to the provisions of Act 495 independently from the larger overall action of which it is a part. A lawsuit by one joint tortfeasor against another for contribution is an action based on an equitable theory of liability within the contemplation of § 2945, which defines products liability actions. *Caldwell, supra.* Furthermore, insofar as the action is brought for contribution of an amount of money already or to be paid by the plaintiff-tortfeasor to satisfy the underlying plaintiff's judgment, it is an action brought on account of injury to the property of the plaintiff-tortfeasor caused by a defective product within the contemplation of § 2945.[5] As a products liability action itself or as a part of a products liability action, such a cross-claim for contribution must be governed by the provisions of § 2949.

---

5. As pointed out to this court by defendant John Blue Company, it is true that the Michigan Court of Appeals has held that the type of damage suffered by a tortfeasor-plaintiff, Genesee County Road Commission, suing for contribution from the Michigan State Highway Commission as a result of its settlement of a claim for wrongful death due to hazardous road conditions is not property damage within the contemplation of M.C.L.A. § 691.1407. *Genesee County Road Commission, et al. v. Michigan State Highway Commission,* 272 N.W.2d 632 (Mich.App.1978). However, § 691.1407 was strictly construed by the court since it establishes an exception to the doctrine of sovereign immunity. It is inappropriate to apply an interpretation made in such a context to a statute such as Act 495 which has a remedial purpose.

With respect to the application of § 2949, it should be noted that a joint tortfeasor suing for contribution is a plaintiff, as is any other cross-claimant, within the contemplation of § 2949. By providing that contributory negligence shall not be a bar to recovery, § 2949 avoids by definition, with respect to a plaintiff-tortfeasor, application of the common law doctrine denying any contribution among joint tortfeasors. Rather than deny any contribution or provide only for equal contribution, the plaintiff-tortfeasor's right to recovery is required to be diminished, pursuant to § 2949, in proportion to the amount of negligence attributed to it, thereby apportioning damages by imposing the burden of payment among the parties in proportion to each party's relative fault.

Given the considerations of policy and statutory language discussed above, it is this court's holding that Act 495 does modify M.C.L.A. § 600.2925a insofar as it relates to contribution between joint tortfeasors in products liability cases. The practical effect of applying § 2949 to joint tortfeasors, as theoretically described above, is that each joint tortfeasor must pay damages equal to its relative degree of fault for the accident in question. Having been found 22.5% negligent, Clinton Crop Service should have contribution, pursuant to § 2949, from John Blue Company for any amount it is required to pay on the judgment in this case as to George Jorae in excess of $45,000 and as to Frances Jorae in excess of $22,500. Having been found 55% negligent, John Blue Company should have contribution, pursuant to § 2949, for any amount it is required to pay on the judgment in excess of $110,000 to George Jorae and $55,000 to Frances Jorae.

In summary, Act 495 is held to apply to this case, thereby requiring apportionment of damages between all parties found to be negligent in proportion to the amount of negligence attributed to them, and Clinton Crop Service's cross-claim for indemnity is dismissed.

So ordered.

## APPENDIX I

Act No. 495
Public Acts of 1978
Approved by Governor
December 11, 1978
STATE OF MICHIGAN
79TH LEGISLATURE
REGULAR SESSION OF 1978

Introduced by Reps. Gingrass, Angel, Rosenbaum, DiNello, Welborn, Anderson, Thaddeus C. Stopczynski, Engler, Ryan, Monsma, Campbell, Powell, Geerlings, Buth, Kok, Gast, Griffin, Mathieu, Cawthorne, Conlin and Mittan

Rep. Cushingberry named co-sponsor
ENROLLED HOUSE BILL NO. 5689

AN ACT to amend section 5805 of Act No. 236 of the Public Acts of 1961, entitled as amended "An act to revise and consolidate the statutes relating to the organization and jurisdiction of the courts of this state; the powers and duties of such courts, and of the judges and other officers thereof; the forms and attributes of civil claims and actions; the time within which civil actions and proceedings may be brought in said courts; pleading, evidence, practice and procedure in civil and criminal actions and proceedings in said courts; to provide remedies and penalties for the violation of certain provisions of this act; and to repeal all acts and parts of acts inconsistent with, or contravening any of the provisions of this act," being section 600.5805 of the Compiled Laws of 1970; and to add sections 2945, 2946, 2947, 2948 and 2949.

*The People of the State of Michigan enact:*

Section 1. Section 5805 of Act No. 236 of the Public Acts of 1961, being section 600.5805 of the Compiled Laws of 1970, is amended and sections 2945, 2946, 2947, 2948 and 2949 are added to read as follows:

Sec. 2945. As used in sections 2946 to 2949 and section 5805, "products liability action" means an action based on *any* legal or equitable theory of liability brought for or on account of death or injury to person

or property caused by or resulting from the manufacture, construction, design, formula, development of standards, preparation, processing, assembly, inspection, testing, listing, certifying, warning, instructing, marketing, advertising, packaging, or labeling of a product or a component of a product.

Sec. 2946. (1) It shall be admissible as evidence in a products liability action that the manufacture, construction, design, formula, development of standards, preparation, processing, assembly, inspection, testing, listing, certifying, warning, instructing, marketing, advertising, packaging, or labeling was done pursuant to the generally recognized and prevailing nongovernmental standards in existence at the time the product was sold or delivered by the defendant to the initial purchaser or user.

(2) It shall be admissible in evidence in a products liability action that the manufacture, construction, design, formula, development of standards, preparation, processing, assembly, inspection, testing, listing, certifying, warning, instructing, marketing, advertising, packaging, or labeling was done pursuant to the federal and state law, rules, or regulations in effect at the time the product was sold or delivered by the defendant to the initial purchaser or user.

Evidence of a change in the philosophy, theory, knowledge, technique, or procedures of or with regard to the manufacture, construction, design, formula, development of standards, preparation, processing, assembly, inspection, testing, listing, certifying, warning, instructing, marketing, advertising, packaging, or labeling made, learned, placed in use or discontinued after the event of death or injury to person or property shall not be admissible in a product liability action to prove liability.

Sec. 2947. It shall be admissible as evidence in a products liability action that the cause of the death or injury to person or property was an alteration or modification of the product, or its application or use, made by a person other than and without specific directions from the defendant.

Sec. 2948. It shall be admissible as evidence in a products liability action that

before the event of death or injury to person or property pamphlets, booklets, labels or other written warnings were provided which gave notice to foreseeable users of the material risk of injury, death, or damage connected with the foreseeable use of the product or provided instructions as to the foreseeable uses, applications, or limitations of the product which the defendant knew or should have known.

Sec. 2949. (1) In all (products liability actions) brought to recover damages resulting from death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence *shall not bar a recovery* by the plaintiff or the plaintiff's legal representatives, but damages sustained by the plaintiff shall be *diminished in proportion to the amount of negligence attributed to the plaintiff.*

(2) If the court determines that the claim or defense is frivolous, the court may award costs and reasonable attorney's fees to the prevailing party in a products liability action.

Sec. 5805. (1) A person shall not bring or maintain an action to recover damages for injuries to persons or property unless, after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within the periods of time prescribed by this section.

(2) The period of limitations is 2 years for an action charging assault, battery, or false imprisonment.

(3) The period of limitations is 2 years for an action charging malicious prosecution.

(4) The period of limitations is 2 years for an action charging malpractice.

(5) The period of limitations is 2 years for an action against a sheriff charging misconduct or neglect of office by the sheriff or the sheriff's deputies.

(6) The period of limitations is 2 years after the expiration of the year for which a constable was elected for actions based on the constable's negligence or misconduct as constable.

(7) The period of limitations is 1 year for an action charging libel or slander.

(8) The period of limitations is 3 years after the time of the death or injury for all other actions to recover damages for the death of a person, or for injury to a person or property.

(9) The period of limitations is 3 years for a products liability action. However, in the case of a product which has been in use for not less than 10 years, the plaintiff, in proving a prima facie case, shall be required to do so without benefit of any presumption.

Section 2. This amendatory act shall not take effect unless House Bill No. 6541 of the regular session of the 1977–78 legislature is enacted into law.

This act is ordered to take immediate effect.

        (s) <u>T. Thos. Thatcher</u>
        Clerk of the House of
        Representatives.

        (s) <u>Billie S. Farnum</u>
        Secretary of the Senate.

Approved _____

(s) <u>William G. Milliken</u>
    Governor.

## APPENDIX II

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

GEORGE JORAE and         Civil Action
FRANCES JORAE         No. 7–72165

v.

CLINTON CROP SERVICE
and
JOHN BLUE COMPANY

#### SPECIAL INTERROGATORIES

1. Do you find that the John Blue Company was negligent and that the negligence was a proximate cause of the accident all as explained in these instructions?

        Yes  ✔     No _____

2. Do you find that the Clinton Crop Service was negligent and that the negligence was a proximate cause of the accident all as explained in these instructions?

        Yes  ✔     No _____

3. Do you find that George Jorae was contributorily negligent and that the negligence was a proximate cause of the accident all as explained in these instructions?

        Yes  ✔     No _____

4. If your answer is yes to either question no. 1 or 2 and yes as to question no. 3, please state the % of negligence assigned to each, George Jorae, John Blue Company and Clinton Crop Service, assuming that the total is 100. Do not answer this question unless either question 1 or 2 was answered yes and question 3 was answered yes.

        George Jorae          22.5%
        John Blue Company    55 %
        Clinton Crop Service   22.5%

5. Do you find the John Blue Company breached an implied warranty that was a proximate cause of the accident all as explained in these instructions?

        Yes  ✔     No _____

6. Do you find the Clinton Crop Service breached an implied warranty that was a proximate cause of the accident all as explained in these instructions?

        Yes  ✔     No _____

7. Regardless of what your answers were to the previous questions, what if any is the amount of damages stated in a dollar amount that George Jorae suffered and will suffer in the future that was a proximate result of the accident all as explained in these instructions?

        $ 200,000.00

8. Regardless of what your answers were to the previous questions, what if any is the amount of damages stated in a dollar amount that Frances Jorae suffered and will suffer in the future that was a proximate result of the accident all as explained in these instructions?

        $ 100,000.00

        (s) <u>Gary Roger Alfrey</u>
        Foreperson