**Philomene CONKRIGHT, Plaintiff**

**v.**

**BALLANTYNE OF OMAHA, INC., Ballantyne Instruments & Electronics, Inc. (former name).**

**M. E. BOATMAN CO., INC., Defendant and Cross-Plaintiff,**

**v.**

**BALLANTYNE OF OMAHA, INC., Defendant and Cross-Defendant.**

**No. G 78–83 CA 6.**

United States District Court, W. D. Michigan, S. D.

Aug. 12, 1980.

---

148

Robert J. VanLeuven, McCroskey, Libner, VanLeuven, Kortering, & Cochrane, Muskegon, Mich., for plaintiff.

David R. Munroe, Landman, Luyendyk, Latimer, Clink & Robb, Muskegon, Mich., for defendant Ballantyne.

Don V. Souter, Cholette, Perkins & Buchanan, Grand Rapids, Mich., for defendant Boatman.

## OPINION

MILES, Chief Judge.

This matter presents an example of the difficulties involved in interpreting prior decisional and statutory law of the State of Michigan so as to accommodate the adoption of a pure comparative negligence system.[1] Since, under the doctrine of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), this Court must in diversity cases apply the law of the forum state, the Court's function is not to determine what it believes is the "best" or the "fairest" accommodation between principles of comparative negligence and of prior precedent; rather, the federal court—in the absence of any state court holding on a particular question—must decide which approach the state courts are most likely in the future to embrace. *See* C. Wright, *Handbook of the Law of Federal Courts* § 58, at 270 71 (3d ed. 1976). In this case the Court is assigned the task of determining the future course of Michigan law relating to contribution and indemnity among joint tortfeasors under comparative negligence, and specifically the effect of such rules upon the settlement of claims against individual defendants in multi-defendant lawsuits.

The pertinent facts of this case may be briefly stated. The plaintiff seeks damages, on theories of negligence and warranty, for injuries sustained from her operation of a deep fat fryer, manufactured by defendant Ballantyne, so as to cause her to suffer severe burns from being sprayed with hot, pressurized oil. Defendant Boatman is a distributor of Ballantyne's machines, and the machine which caused plain-

1. Comparative negligence was first adopted in Michigan by the legislature, for use only in the context of products liability actions. M.C.L.A. § 600.2949, M.S.A. § 27A.2949. The Supreme Court of Michigan subsequently adopted pure comparative negligence as a rule of general application. *Placek v. City of Sterling Heights*, 405 Mich. 638, 275 N.W.2d 511 (1979).

tiff's injuries was sold to plaintiff's husband by an employee of Boatman.[2]

The complaint was filed on February 17, 1978, and has since been amended several times; the most recent amendment, plaintiff's fourth amended complaint, was filed on July 20, 1979. It may be deduced from the pleadings and correspondence in the file of this case that in May or June of 1980 plaintiff and defendant Boatman engaged in serious settlement negotiations, resulting in an apprehension on the part of defendant Ballantyne that the case might be settled and disposed of as to its codefendant. Consequently, Ballantyne filed on June 26, 1980, a motion for leave to file a cross-claim against Boatman for contribution and indemnification. Subsequent to this, on July 9, 1980, plaintiff and defendant Boatman filed jointly a motion for dismissal of plaintiff's claim against Boatman stating that these parties had indeed agreed upon a settlement. These two motions are essentially antagonistic, plaintiff and Boatman opposing the granting of leave for the proposed cross-claim, and Ballantyne opposing the dismissal of Boatman as party defendant.

## COMPARATIVE CONTRIBUTION

To aid in analyzing whether, and under what conditions, defendant Boatman should be allowed to settle out of this case, it is first important to understand what would happen if Boatman remained a defendant for the trial of this matter. Neither *Placek v. City of Sterling Heights*, 405 Mich. 638, 275 N.W.2d 511 (1979), nor the Michigan products liability statute, M.C.L.A. § 600.-2945 *et seq.*, M.S.A. § 27A.2945 *et seq.* —these being the fountainheads of comparative negligence in Michigan—addresses the question of the allocation of relative degrees of fault among joint tortfeasors. To the knowledge of this Court, neither has any subsequent Michigan case or statute.

The Michigan contribution statute, M.C.L.A. § 600.2925a *et seq.*, M.S.A. § 27A.2925(1) *et seq.*, which was adopted

prior to the advent of comparative negligence, followed the ruling in *Moyses v. Spartan Asphalt Paving Co.*, 383 Mich. 314, 174 N.W.2d 797 (1970) in sounding the death knell for the rule barring contribution between joint tortfeasors. Instead, there was established a right of contribution on the part of one who has paid more than his pro rata share of the common liability of those jointly or severally liable for a particular injury. The effect of this development was not to infringe the joint and several nature of the liability imposed upon concurrent tortfeasors, *cf. Maddux v. Donaldson*, 362 Mich. 425, 108 N.W.2d 33 (1961); rather, it was to allow those held jointly and severally liable to seek recovery *inter se* for amounts paid in excess of their individual pro rata shares. Thus, this approach accomplished the end of eliminating the injustice of a rule forbidding contribution between parties jointly and severally liable, while retaining the power of the plaintiff to seek his entire remedy from the most convenient, available or solvent of those held liable.

What is not accomplished by a law of contribution under which liability is allocated on a pro rata basis, is the assessment of relative fault as between joint tortfeasors so as to allow a corresponding allocation of liability or right of contribution. Under a system of contributory negligence, where the factfinder is not given the job of determining the proportionate negligence of the plaintiff, a decision not to complicate matters by requiring the assessment of relative fault as between codefendants is understandable. However, where a regime of comparative negligence assigns to the factfinder the task of assessing the proportionate fault of the plaintiff, there is less reason to consider the factfinder incompetent to make a similar allocation of fault among joint tortfeasors. Further, the equitable arguments for abandoning a strict doctrine barring recovery by the contributorily negligent plaintiff are similar to equitable

---

**2.** Obviously, many factual details, legally significant on issues other than those here in question, are omitted.

claims that a particular defendant should not be held liable for an injury in an amount greater than his proportionate causal fault for such injury.

■ It is the opinion of this Court that, at least in the area of products liability,[3] developments in Michigan law subsequent to the enactment of the Michigan contribution statutes have had the effect of eliminating the pro rata distribution of liability among joint tortfeasors, along with the statute's prohibition of the consideration of relative degrees of fault, M.C.L.A. § 600.-2925b, M.S.A. § 27A.2925(2). These principles have been replaced with a system under which relative degrees of fault of joint tortfeasors must be assessed for the purpose of more justly and precisely determining the extent of the liability of individual tortfeasors. Although the question of the effect of comparative negligence upon principles of contribution is one best answered by the legislature, when such answers are not forthcoming the courts are competent to address the problem. In states whose comparative negligence statutes have not addressed the issue of comparative fault of joint tortfeasors, courts have found it necessary and appropriate to adopt judicially rules of proportionate assessment of fault. *See, e. g., American Motorcycle Ass'n v. Superior Court*, 20 Cal.3d 578, 576 P.2d 899, 146 Cal.Rptr. 182 (1978); *Packard v. Whitten*, 274 A.2d 169 (Me.1971); *Bielski v. Schulze*, 16 Wis.2d 1, 114 N.W.2d 105 (1962). Even in the absence of comparative negligence—either judicial or statutory—the New York Court of Appeals has deemed it proper to apportion damages between tortfeasors. *Dole v. Dow Chemical Co.*, 30 N.Y.2d 143, 282 N.E.2d 288, 331 N.Y.S.2d 382 (1972). Given the policy justifications for a system apportioning fault among tortfeasors, the amenability of courts in other states to judicial adoption of such a system, and the apparent willingness of the Supreme Court of Michigan to innovate in this general field, as evidenced in *Placek*, I find that I must concur with Judge Joiner in concluding that under Michigan law comparative fault among joint tortfeasors is now the rule. *Jorae v. Clinton Crop Service*, 465 F.Supp. 952 (E.D.Mich.1979).

■ Remaining to be considered is in what manner the allocation of liability among joint tortfeasors is to be implemented. In some states it can be said that "[s]everal liability has clearly replaced joint and several liability," *Greenwood v. McDonough Power Equipment, Inc.*, 437 F.Supp. 707 (D.Kan.1977) (interpreting Kansas law). In such a jurisdiction each defendant is liable only for his proportionate share of the plaintiff's damages, after they have been reduced by the proportion of plaintiff's contributory negligence. However, such an approach appears to be dependent upon legislative abolition of joint and several liability. *See* H. Woods, *Comparative Fault* § 13:4 (1978). In light of the arguments supporting the use of contribution rather than several liability as a means of distributing damages among defendants—principally that the defendants, rather than plaintiff, should shoulder the potential burden of one of their number being unavailable or unable to satisfy a judgment—this Court sees no basis for abandoning contribution as the device by which codefendants' liability may be limited under Michigan law. Thus, while the factfinder will determine relative degrees of fault of joint tortfeasors, defendants continue to be jointly and severally liable for plaintiff's damages—reduced, of course, in proportion to plaintiff's negligence as determined—and the allocation of fault among tortfeasors will serve solely as

**3.** The determination that Michigan is a "comparative contribution" jurisdiction, despite the express provision of M.C.L.A. § 600.2925b, M.S.A. § 27A.2925(2) against considering relative degrees of fault, is arguably more straightforward in the products liability area than in the balance of tort law, because the source of comparative negligence in products cases is legislative and thus can be said to constitute an implied modification of prior statutory law concerning contribution. *See Jorae v. Clinton Crop Service*, 465 F.Supp. 952 (E.D.Mich.1979). Because the case at bar is a products liability case, it is unnecessary to decide here whether *Placek, supra* n. 1, has likewise modified the principles of contribution outside the products liability field.

a basis for determining their right of contribution against each other. This is the approach adopted in *Jorae*, as well as in the *American Motorcycle, Packard*, and *Bielski* cases, and is the most consistent with Michigan practice prior to comparative negligence.

Thus, if defendant Boatman were to remain a party for the trial of this case, the Court would direct the jury to determine the proportion of contributory negligence of the plaintiff and, in addition, the proportionate degrees of fault attributable to each of the defendants. The latter determination would be used in determining what, if any, right of contribution would exist between defendants.

## INDEMNITY

Ballantyne's proposed cross-claim against Boatman seeks not only contribution but indemnification. Since there is often some confusion between these terms,[4] I should state what is meant by each of them for the purposes of this opinion. Contribution is a device by which liability may be apportioned among tortfeasors so that each is required to pay a share, on either a pro rata or a relative fault basis; indemnity operates to shift the entire liability from one who has been found liable to another who should bear it instead. W. Prosser, *Handbook of the Law of Torts* § 51 (4th ed. 1971).

Ballantyne's proposed indemnity claim against Boatman, as discussed in its "Brief in Opposition to Plaintiff's Motion to Dismiss M.E. Boatman Company and Supplementary Brief in Support of Motion to File Cross-claim," rests upon the possibility that the finder of fact might determine Ballantyne to be vicariously liable for negligent acts of Boatman and/or Boatman's agent Roger Simpson. If this were the basis for Ballantyne's liability, the claim is

that Ballantyne would be entitled to indemnification from Boatman under principles of agency. This theory appears to be consonant with Michigan case law providing that one who is personally free from fault but is found to be vicariously liable for the fault of another is entitled to indemnity from the one at fault. *Indemnity Ins. Co. v. Otis Elevator Co.*, 315 Mich. 393, 24 N.W.2d 104 (1946); *Minster Machine Co. v. Diamond Stamping Co.*, 72 Mich.App. 58, 248 N.W.2d 676 (1976); *Proctor & Schwartz, Inc. v. United States Equip. Co.*, 624 F.2d 771 (6th Cir. 1980); *Prosky v. National Acme Co.*, 404 F.Supp. 852 (E.D.Mich.1975). The Michigan products liability statute does not purport to address the matter of common law indemnity, and neither does *Placek*; the Michigan contribution statute expressly disclaims any effect upon principles of indemnity. M.C.L.A. § 600.2925a(7); M.S.A. § 27A.2925(1)(7). Unlike contribution on a pro rata basis, indemnity conflicts in no way with a rule of comparative negligence or of comparative contribution; on the contrary, indemnity is in harmony with these principles, and can actually be viewed as a historical and conceptual predecessor of the more sophisticated approach of comparative fault. Thus I must again concur with *Jorae*, 465 F.Supp. at 957, in deciding that the Michigan law of indemnity is unaffected by the development of comparative negligence.

As a result, if defendant Boatman were to remain a party for the trial of this case, an issue to be decided by the Court would be Ballantyne's claim for indemnification: if Ballantyne were to be found liable solely on the basis of vicarious liability, the jury finding no fault on the part of Ballantyne, it would be entitled to indemnification from Boatman for any liability imposed upon it.

## SETTLEMENT

With these principles established, the Court may now consider the conditions un-

---

4. The Supreme Court of California has gone so far as to determine that the traditional distinction between contribution and indemnity is more formalistic than substantive. *American Motorcycle Ass'n v. Superior Court*, 20 Cal.3d 578, 576 P.2d 899, 146 Cal.Rptr. 182 (1978).

(*See* H. Woods, *Comparative Fault* § 13:10 (1978)). However, in view of this Court's conclusion that Michigan indemnity principles are not affected by its adoption of comparative contribution, the distinction obviously remains significant.

der which a defendant in a multiple defendant case may settle individually with the plaintiff and be dismissed from the case. There are several different approaches which may be taken to the problem of the effect of a partial settlement upon the recovery of a plaintiff against nonsettling defendants, and upon the nonsettling defendants' entitlement to contribution from a dismissed defendant.[5] The Michigan contribution statute provides that a release of one of two or more joint tortfeasors discharges the party released from all liability for contribution and reduces the claim against the remaining party or parties by the amount stipulated by the release or the amount of the settlement, whichever is greater. M.C.L.A. § 600.2925d(b), (c); M.S.A. § 27A.2925(4)(b), (c). The question to be decided is whether this rule, like the rule of pro rata contribution among joint tortfeasors, has been changed by the advent of comparative negligence, and if so, in what manner.

There are two competing policy considerations at work in the decision to be made here: first, the policy of encouraging voluntary settlements—or at least of not unnecessarily discouraging them; and second, the policy residing generally behind a system of comparative fault, that of seeking an equitable distribution of loss among those found responsible for an injury. *Gomes v. Brodhurst,* 394 F.2d 465, 468 (3d Cir. 1967). Obviously, the policy of encouraging settlements would be best served by a rule under which a release not only discharges a settling party from liability for contribution but also has no effect upon the amount plaintiff may recover from nonsettling parties. Equally clearly, such a rule would do violence to the principle of equitable distribution of loss among the parties, as well as inviting collusion between plaintiffs and favored defendants, to the detriment of nonsettling defendants. The goal is to reach a balance under which settlement remains practicable, but which lessens the inequity of the rule hypothesized above.

The Michigan contribution statute seeks this balance by discharging settling defendants from liability for contribution while reducing the amount recoverable by plaintiffs from nonsettling defendants by the amount of the settlement. It is this Court's conclusion that the first aspect of this approach remains unscathed by the appearance of comparative fault. However, in light of the emergence, as already discussed, of a system under which fault may be relatively allocated among joint tortfeasors, there is mandated some adjustment in the rule by which a plaintiff's recovery from nonsettling defendants is to be reduced.

■ Joint tortfeasors are entitled, under the doctrine of comparative contribution announced earlier, to have their relative degrees of fault assessed by the factfinder so as to facilitate the equitable distribution of the loss among them. I see no good reason for this entitlement to be lost simply because a claim has been settled as to one defendant. The Michigan contribution statute establishes a system in which the plaintiff's recovery is reduced simply by the amount of his settlement, a system which, like one in which no reduction is made, may well encourage collusive dealing between plaintiff and the settling defendant—particularly under a rule of comparative contribution. *Gomes,* 394 F.2d at 468. Rather than to continue a rule which tends to undermine the policy behind comparative contribution and to encourage collusion, I believe that Michigan will adopt an approach under which the comparative fault of a defendant dismissed pursuant to a settlement is determined by the finder of fact, and this proportion of fault is employed to reduce plaintiff's recovery against nonsettling defendants.[6] This is the rule adopted

---

**5.** The Uniform Contribution Acts of 1939 and 1955, 12 Uniform Laws Annotated 57 *et seq.,* each adopt a different response to this problem, and additional differences are reflected in the approaches taken by several states. *See generally* H. Woods, *supra* n. 4 §§ 13:6–13:8.

**6.** The plaintiff may protest that such a manner of reducing her recovery against a nonsettling defendant offers less certainty than a rule based upon the dollar amount of her settlement, and tends to subject her recovery against the nonsettling defendant to the chance that

by *Gomes,* and this approach is consistent with the frequency with which, under various circumstances, courts have been willing to submit to the factfinder the comparative fault of an absent tortfeasor. *See, e. g., Frey v. Snelgrove,* Minn., 269 N.W.2d 918 (1978); *Pierringer v. Hoger,* 21 Wis.2d 182, 124 N.W.2d 106 (1963); *Greenwood v. McDonough Power Equip., Inc.,* 437 F.Supp. 707 (D.Kan.1977). Thus in the case at bar, if plaintiff and defendant Boatman choose to consummate their settlement under the terms announced today by the court, plaintiff's release of Boatman will operate to discharge Boatman from any potential liability for contribution towards any judgment obtained against Ballantyne. None-theless, the jury will be asked to determine the degree of fault attributable to defendant Boatman, which determination will be employed to reduce proportionately any judgment entered against Ballantyne.

■ This conclusion with respect to the effect of settlement upon defendant Ballantyne's right to contribution does not resolve the question of whether settlement also discharges any claim of Ballantyne against Boatman for indemnity. As discussed earlier, I have concluded that Michigan's new comparative fault doctrine has had no effect upon existing law concerning indemnity. Therefore, in accordance with M.C.L.A. § 600.2925a(7); M.S.A. § 27A.2925(1)(7), any settlement between plaintiff and a defendant does not operate to discharge any non-settling defendant's claim for indemnification. Thus, in the case at bar, plaintiff's settlement with defendant Boatman will not operate to dismiss Boatman totally from the case, for Boatman must remain a party for the limited purpose of defending Ballantyne's cross-claim for indemnifica-

tion. However, the need for Boatman's presence even for this purpose may be obviated should the plaintiff's release contain an agreement to indemnify Boatman from any claim for indemnity made by Ballantyne, coupled with a covenant to satisfy any judgment against Ballantyne should it be determined at trial that Ballantyne is entitled to indemnity from Boatman. Such an agreement would be in the nature of a so-called *"Pierringer* release" as described in *Pierringer v. Hoger* and in *Frey v. Snelgrove,* and if plaintiff and defendant Boatman decide to employ such a release they should follow the guidelines set forth in *Frey,* 269 N.W.2d at 923.[7]

### CONCLUSION

Leave of court is required to permit Ballantyne to file its cross-claim against Boatman, for the twenty day period during which Ballantyne's answer could have been amended to include a cross-claim has long since expired. *In re Cessna Distributorship Antitrust Litigation,* 532 F.2d 64 (8th Cir. 1976). I find, however, that the prejudice accruing to plaintiff and defendant Boatman from this delayed cross-claim is not great, particularly since if Ballantyne is not allowed to cross-claim here its claims for contribution and indemnity will certainly be litigated in a separate action. Therefore, in the interest of prompt and efficient disposition of the entire dispute, Ballantyne's motion for leave to file a cross-claim is hereby granted.

This Court's rulings, as stated earlier, may affect the proposed settlement between plaintiff and defendant Boatman. Therefore, instead of simply granting these parties' motion to dismiss, the Court hereby grants plaintiff and Boatman leave to refile

the jury may find the dismissed defendant to be predominantly at fault. There are two related responses to this concern. First, a settling plaintiff always sacrifices the possibility of a higher recovery, whether against a single defendant or against the defendant who remains after a partial settlement. Second, the possibility of the plaintiff recovering less than she would hope, due to a reduction of her damages in the amount of the dismissed defendant's comparative fault, is counterbalanced by the

possibility of a *greater* recovery, should the dismissed defendant's fault be determined to be relatively low. These are all factors to be weighed by plaintiffs in deciding whether to settle.

7. If the parties chose to so proceed, this Court would also be receptive to a *Pierringer* release dealing with both contribution and indemnity claims.

their motion to dismiss, should they agree upon a satisfactory settlement under the conditions set forth in this opinion. Unless this motion is accompanied by satisfactory evidence of a *Pierringer* type release with respect to Ballantyne's indemnity claim, the Court will dismiss Boatman in all respects except its potential liability for indemnification, for the limited purpose of which Boatman will remain a party. If, however, plaintiff's release of Boatman suitably agrees to indemnify Boatman against an indemnity claim by Ballantyne, Boatman will be dismissed entirely from this action.

IT IS SO ORDERED.